**ANDERSON KILL & OLICK, P.C.**
1251 Avenue of the Americas
New York, New York 10020-1182
Todd E. Duffy
Dennis J. Nolan
Tel: (212) 278-1000
Fax: (212) 278-1733

*Proposed Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>USA UNITED FLEET, INC., <u>et</u> <u>al.</u>,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 11-45867<br><br>Joint Administration Requested |

**DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 361, 362 AND 363 APPROVING THE USE OF CASH COLLATERAL, PROVIDING ADEQUATE PROTECTION AND SETTING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), by and through their proposed counsel, submit this motion (the "**Motion**") for entry of interim and final orders pursuant to 11 U.S.C. §§ 105, 361, 362 and 363

---

[1] USA United Fleet, Inc. is also known as Shoreline Fleet, Inc. ("**United/Shoreline Fleet**"). In addition to United/Shoreline Fleet, the Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: USA United Holdings, Inc., a/k/a Shoreline Merge, Inc. ("**United Holdings**" or "**Shoreline Merge**"); United Tom Tom Transportation, Inc., a/k/a Shoreline Buses, Inc. ("**United Tom Tom**" or "**Shoreline Buses**"); USA United Bus Express, Inc., a/k/a Shoreline Bus Express ("**United Bus**" or "**Shoreline Express**"); USA United Transit, Inc., a/k/a Shoreline Pupil Transit, Inc. ("**United Transit**" or "**Shoreline Pupil**"); United Fleet, Inc. ("**United Fleet**"); Tom Tom Escorts Only, Inc. ("**Tom Tom Escorts**") and Shoreline Transit, Inc. ("**Shoreline Transit**").

NYDOCS1-970888.2

approving the use of cash collateral, providing adequate protection and setting a final hearing pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure. In support of the Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105, 316, 362, and 363 and Rule 4001 of the Federal Rules of Bankruptcy Procedure.

## BANKRUPTCY RULE 4001 AND LOCAL RULE 4001-5 STATEMENT

2. In accordance with Bankruptcy Rule 4001(b)(1)(B) and Local Rule 4001-5, the Debtors submits this concise statement listing certain material terms of the relief set forth in the Interim Order:

(i) <u>Parties with Interest in Cash Collateral.</u> The Parties to the Loan Agreement (defined below).

(ii) <u>Cash Collateral.</u> The Debtor seeks authority to use cash collateral of Comerica Bank ("Comerica") to fund payroll and to pay other expenses of operating its business in accordance with the Budget (defined below).

(iii) <u>Termination Date.</u> The right to use cash collateral pursuant to the Interim Order shall terminate: (i) upon dismissal of the chapter 11 case; (ii) conversion of the chapter 11 case to a case under chapter 7 of the Bankruptcy Code; or (iii) if the Interim Order is revoked, suspended, stayed, or reversed on appeal.

(iv) <u>Adequate Protection.</u> The Debtor contemplates the provision of adequate protection to Comerica for any diminution in value of the Pre-Petition Collateral or cash collateral from the Petition Date in the following form: (i) a continuing, valid, binding, enforceable, and automatically perfected postpetition first-priority security interest in

the Pre-Petition Collateral and (ii) a replacement lien on all of the Debtor's post-petition assets.

(v) <u>Carve-Out.</u>  There is no carve-out.

(vi) There is no provision requiring the Debtors to pay Comerica's expenses and attorneys' fees in connection with the proposed use of Cash Collateral.

## BACKGROUND

3. On the date hereof (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief (the "**Chapter 11 Cases**") pursuant to chapter 11 of title 11 of the United States Code (11 U.S.C. §§ 101-1552) (the "**Bankruptcy Code**").

4. The Debtors continue to operate their business and manage their affairs as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner or creditors' committee has been appointed in this case.

5. Information regarding the Debtors' businesses and the events leading to these Chapter 11 Cases is set forth in the Declaration of William Moran in Compliance with Rule 1007-4 of the Local Bankruptcy Rules (the "**1007-4 Declaration**"), filed concurrently herewith.

6. Through these Chapter 11 Cases, the Debtors intend to rehabilitate their businesses, deleverage their balance sheets and increase liquidity to satisfy the claims of Comerica (described below), vendors and other creditors under a plan of reorganization that promotes the Debtors' business plan and complies with the applicable provisions of the Bankruptcy Code.

**C.**     **Prepetition Indebtedness and Capital Structure**

7.  On or about June 17, 2004, in connection with the Original Loan Agreement, United Holdings, United Tom Tom, United Bus, United Transit, United Fleet and United/Shoreline Fleet each executed a term promissory note in favor of Comerica in the original principal amount of $10,000,000.00 (the "**2004 Term Note**"). The 2004 Term Note was later made subject to the Amended Loan Agreement.

8.  On or about April 21, 2010, in connection with the Amended Loan Agreement, each Borrower executed: (1) a demand note in favor of Comerica in the original principal amount of $3,000,000.00; (2) a promissory note in favor of Comerica in the original principal amount of $1,050,000.00; and (3) a promissory note in favor of Comerica in the original principal amount of $4,109,237.05 (collectively, the "**Notes**").

9.  To secure the repayment of the loans made by Comerica under the Amended Loan Agreement and the Notes, each Borrower executed a security agreement in favor of Comerica (collectively, the "**Security Agreements**").

10. The Security Agreements grant Comerica a first priority security interest in, and lien upon, substantially all assets of each respective Borrower, including, but not limited to, all accounts, general intangibles, inventory, equipment, fixtures, software, goods, money, deposits, and all products and proceeds of the foregoing as more fully set forth in the Security Agreements (the "**Collateral**"), including the Debtors' vehicles.

**D.   The Debtors' Need for the Use of Cash Collateral**

11. Without the immediate use of Comerica's cash collateral (the "**Cash Collateral**"), the Debtors will be unable to pay salaries, rent, utilities and other operating expenses incurred in the ordinary course of business and may be forced to cease

operations and terminate all of its 1,181 employees. Thus, the Debtors' ability to preserve and maximize the value of their assets for all creditors (secured and unsecured) will be critically impaired, and their ability to reorganize, will be substantially jeopardized absent authority to use the Cash Collateral. Accordingly, the Debtors seek the entry of an interim, and subsequently a final, order authorizing the use of the Cash Collateral pursuant to the budget annexed hereto as Exhibit A (the "**Cash Collateral Budget**"), subject to a variance equal to the greater of ten percent (10%) of the expenses set forth in the Cash Collateral Budget. To the extent amounts set forth in the Cash Collateral Budget are not used in a given period, they may be spent in any subsequent period(s).

12. Through the use of Cash Collateral, the Debtors will be able to maintain their operations as going concerns while protecting, preserving and maximizing the value of their assets for all creditors including Comerica. In order to adequately protect Comerica's interests in the Debtors' assets, the Debtors propose to grant Comerica replacement liens on all of the Debtors' postpetition assets solely to the extent of any diminution in the value of the prepetition collateral.[2]

13. The Debtors respectfully submit that the proposed replacement liens will adequately protect Comerica within the meaning of section 361 of the Bankruptcy Code and maintain that they should be authorized to use the Cash Collateral in accordance with the Cash Collateral Budget.

---

[2] By proposing to grant Comerica the replacement liens on the Debtors' postpetition assets, the Debtors reserve the right to subsequently contest the validity, extent, priority, and/or perfection of Comerica's liens or seek to avoid such liens as preferential transfers or assert other potential claims.

14. In addition, the Debtors' believe that Comerica enjoys a significant equity cushion. The Debtors' vehicles alone are worth more than $10 million, and the Debtors' are owed an accounts receivable valued at approximately $5,465,000.00. This results in Comerica's collateral position being overcollateralized by approximately $5 million.

## **CONCISE STATEMENT OF RELIEF REQUESTED PURSUANT TO BANKRUPTCY RULE 4001(b)(1)(B)[3]**

15. By this motion, the Debtors respectfully request that the Court enter an order pursuant to sections 105, 361, 362 and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001:

(a) approving on an emergency basis an interim order substantially in the form submitted herewith, authorizing the Debtors to use the Cash Collateral and granting adequate protection to Comerica;

(b) granting Comerica replacement liens pursuant to section 361 and 363(c) and (e), solely to the extent of any diminution in value of their prepetition collateral;

(c) approving the manner of service of notice of this Motion;

(d) scheduling a final hearing on this Motion no earlier than 15 days after the service of the Motion pursuant to Bankruptcy Rule 4001(b); and

(e) granting such other and further relief to the Debtor as the Court deems just and proper.

## **BASIS FOR RELIEF REQUESTED**

16. Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may not use cash collateral unless "(a) each entity that has an interest in such cash collateral consents; or (b) the court, after notice and a hearing, authorizes such use in

---

[3] This Motion is intended to provide only a summary of the relief requested. To the extent there are inconsistencies with the proposed interim order submitted herewith, the terms of the proposed order governs.

accordance with the provisions of this section." 11 U.S.C § 363(c)(2). The Debtors require the immediate use of Cash Collateral to fund their day-to-day operations in chapter 11. Indeed, absent such relief, the Debtors' businesses will be brought to an immediate halt, with damaging consequences for the Debtors, their estates and creditors. The interests of Comerica in the Cash Collateral will be protected by replacement liens in the Debtors' assets to the extent of any diminution in the value of the collateral securing such liens and claims, as well as by the significant equity cushion Comerica enjoys.

17. Section 363(e) of the Bankruptcy Code provides that, upon request of an entity that has an interest in property to be used by a debtor, the Court shall "prohibit or condition such use… as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). The principal purpose of adequate protection is to safeguard the secured creditor against diminution in the value of its interest in property. *See In re 495 Central Park Avenue Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992). Although the term "adequate protection" is not defined in the Bankruptcy Code, section 361 of the Code sets forth three non-exclusive methods of how an interest in property may be adequately protected. *Id.; In re Shriver*, 33 B.R. 176, 181 (Bankr. N.D. Ohio 1983). The non-exclusive forms are: (a) lump sum cash payments to the extent that use of property results in diminution of an entity's interest in property; (b) provision of additional or replacement liens to the extent that use of property results in a diminution in value of an entity's interest in property; and (c) such other relief as will result in an entity realizing the indubitable equivalent of its interest in property. *See* 11 U.S.C. § 361.

18. As the foregoing list is neither exclusive nor exhaustive, there is a great deal of flexibility in terms of what may constitute adequate protection. *See In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. 1987). Ultimately, what constitutes adequate protection is determined on a case-by-case basis. *See In re 495 Central Park Avenue Corp.*, 136 B.R. at 631; *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) (citing *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); *In re Swedeland Development Group, Inc., 16 F.3d 552, 564 (3d Cir. 1994); In re O'Connor*, 808 F.2d at 1393.

19. Courts have held that when the use of cash collateral facilitates the preservation of a debtors' going concern value, the secured creditor is adequately protected by virtue of the preservation or enhancement of the debtor's assets. *See, e.g., In re Constable Plaza Assoc., L.P.*, 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991) (authorizing the use of cash collateral to operate and maintain the debtor's office building, thus protecting the secured lender's collateral); *In re Atrium Dev. Co.*, 159 B.R. 464, 470 (Bankr. E.D. Va. 1993) ("Adequate protection is typically established by the fact that cash is being used to maintain and enhance the value of the underlying income producing real property in which the creditor also usually holds a security interest."). Regardless of the form of adequate protection given, "the entitlement to and measure of adequate protection is always determined by the extent of the anticipated or actual decrease in the value of the secured creditor's collateral during the bankruptcy case." *In re Swedeland Development Group, Inc.*, 16 F.3d 552, 564 (3d Cir. 1994); *see also In re Dunes Casino Hotel,* 69 B.R. 784, 793 (Bankr. D.N.J. 1986) ("Adequate protection is designed to preserve the secured creditor's position at the time of the bankruptcy.").

20. In these cases, the Debtors acknowledge that Comerica may be entitled to adequate protection against any diminution of the value of their prepetition collateral, and are providing Comerica with replacement liens to the extent of any such diminution. In addition, Comerica is also adequately protected by the Debtors' continued operation of their businesses and the resulting preservation of the going concern value of the Debtors' assets. *See, e.g., In re T.H.B. Corp.*, 85 B.R. 192, 195 (Bankr. M.D. Mass 1988) (holding that the steady stream of revenue over the budget period, with the new revenue replacing old, adequately protected the secured lender's interest in its collateral). The Debtors' use of its cash flow pursuant to the Cash Collateral Budget provides an additional layer of adequate protection to Comerica because the Cash Collateral Budget ensures that the Debtors' use of that cash flow will be limited to those items that are essential to operating the Debtors' businesses.

21. Without the use of the Cash Collateral, the Debtors will be unable to pay wages, rent, or utilities, or pay other expenses necessary to operate this business on a day-to-day basis, and would be required to immediately liquidate. The liquidation of the Debtors at this juncture would not be in the interests of any party in these cases, including, particularly, Comerica. The use of Cash Collateral therefore is critical to prevent the abrupt discontinuation of the Debtors' operations and the liquidation of the Debtors' assets.

22. The Debtors respectfully submit that cause has been shown for the entry of an interim order permitting the Debtors to immediately use the Cash Collateral and to excuse compliance with the 14-day stay embodied in Bankruptcy Rule 6004(h), to the extent it is applicable here.

## NOTICE WITH RESPECT TO THE INTERIM ORDER

23. The Debtors submit that given their financial situation, the timing of the Debtors' chapter 11 petitions, and the Debtors' immediate need for authorization to use the Cash Collateral, an expedited hearing as contemplated by Bankruptcy Rule 4001(b) is warranted. The Debtors will provide notice of this Motion and the proposed interim order by overnight mail, fax or email (to the extent practicable) to the Office of the United States Trustee, counsel for Comerica, and Debtors' consolidated 20 largest unsecured creditors. The Debtors respectfully submit that such notice is sufficient and appropriate given the circumstances for the Court to schedule an emergent hearing at which the Debtors can seek the entry of the proposed Interim Order.

## NOTICE WITH RESPECT TO THE FINAL HEARING

24. Pursuant to Bankruptcy Rule 4001(b), the Debtors respectfully request that they be authorized to provide notice of the final hearing to be scheduled by the Court no sooner than 15 days after service of the Motion by serving a copy of the Motion (to the extent not previously served) together with any interim order granting this Motion, on the Office of the United States Trustee, counsel for Comerica, and the Debtors' consolidated 20 largest unsecured creditors. The Debtors' submit that notice constitutes sufficient notice of the final hearing pursuant to Bankruptcy Rule 4001(b) and Bankruptcy Rule 2002.

25. The Debtors have not previously sought the relief requested herein from this or any other Court.

Dated: July 6, 2011

Respectfully Submitted

/s/ Todd E. Duffy
Todd E. Duffy
Dennis J. Nolan
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 278-1000
Facsimile: (212) 278-1733

Proposed Counsel to the Debtors and Debtors-in-Possession