Tracy Hope Davis
United States Trustee for Region 2
271 Cadman Plaza East, Room 4529
Brooklyn, New York 11201
Tel. No. (718) 422-4960
Fax No. (718) 422-4990
William E Curtin (WC-1974)

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------X

In re                                          Case No. 11-45867 (JF)

USA UNITED FLEET INC.,
a/k/a SHORELINE FLEET, INC.                    Chapter 11

        Debtor.

-------------------------------------------------X

In re                                          Case No. 11-45868 (JF)

USA UNITED HOLDINGS INC.,
a/k/a SHORELINE MERGE, INC.                    Chapter 11

        Debtor.

-------------------------------------------------X

In re                                          Case No. 11-45869 (JF)

UNITED FLEET INC.,                             Chapter 11

        Debtor.

-------------------------------------------------X

In re                                          Case No. 11-45872 (JF)

UNITED TOM TOM TRANSPORTATION
INC., a/k/a SHORELINE BUSES, INC.              Chapter 11

        Debtor.

-------------------------------------------------X

In re                                          Case No. 11-45873 (JF)

USA UNITED BUS EXPRESS INC.,
a/k/a SHORELINE BUS EXPRESS, INC.              Chapter 11

        Debtor.

-------------------------------------------------X

```
-------------------------------------------------------X
In re                                          Case No. 11-45875 (JF)

USA UNITED TRANSIT INC.,
A/k/a SHORELINE PUPIL TRANSIT, INC.            Chapter 11

                    Debtor.
-------------------------------------------------------X
In re                                          Case No. 11-45876 (JF)

TOM TOM ESCORTS ONLY, INC.,                    Chapter 11

                    Debtor.
-------------------------------------------------------X
In re                                          Case No. 11-45877 (JF)

SHORELINE TRANSIT INC.,                        Chapter 11

                    Debtor.
-------------------------------------------------------X
```

## <u>DECLARATION OF ALICIA M. LEONHARD</u>

Pursuant to 28 U.S.C. § 1746, Alicia M. Leonhard declares as follows:

1.      I am an Assistant United States Trustee in the Office of the United States Trustee

for Region 2.  In that capacity, I have knowledge and information about the chapter 11

bankruptcy cases of USA United Fleet, Inc., a/k/a Shoreline Fleet, Inc., USA United Holdings,

Inc., a/k/a Shoreline Merge, Inc., United Fleet, Inc., United Tom Tom Transportation, Inc., a/k/a

Shoreline Buses, Inc., USA United Bus Express, Inc. A/k/a Shoreline Bus Express, Inc., USA

United Transit, Inc., a/k/a Shoreline Pupil Transit, Inc., TomTom Escorts Only, Inc., and

Shoreline Transit, Inc. (collectively, the "Debtors").  I submit this Declaration in support of the

Motion of the United States Trustee to Convert these Chapter 11 Cases to Chapter 7, pursuant to

11 U.S.C. § 1112 (the "Motion").

2.  On July 6, 2011 (the "Petition Date"), the Debtors commenced their cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Petitions"). See Case Nos. 11-45867, 11-45868, 11-45869, 11-45872, 11-45873, 11-45875, 11-45876, and 11-45877, ECF No. 1.  Each of the Petitions was signed by William Moran ("Moran"), who identified himself simply as the Debtors' comptroller.  Id.  On the Petition Date, the Debtors purported to provide bus services for school children under contracts with the City of New York Department of Education ("D.O.E.").

3.  The United States Trustee has not formed an unsecured creditors' committee in the Debtors' cases.

4.  The United States Trustee has not appointed a trustee or examiner, and the Debtors remain in control and possession of their assets as debtors-in-possession.

5.  The Debtors all filed skeletal Petitions on the Petition Date and, to date, have not filed schedules and various other required documentation.  See Case Nos. 11-45867, 11-45868, 11-45869, 11-45872, 11-45873, 11-45875, 11-45876, and 11-45877, ECF No. 1.  The Petitions assert that each of the Debtors has between one and forty-nine creditors, assets valued at between $10 million and $50 million, and owes liabilities of between $10 million and $50 million.  Id.

6.  Among the numerous documents and disclosures that the Debtors failed to file are the Corporate Resolution required by Rule 1074-1(a) of the Local Rules of Bankruptcy Procedure for the Eastern District of New York ("Local Rules"), the Corporate Ownership Statement required by Federal Rule of Bankruptcy Procedure ("FRBP") 1007(a)(1) and the list of equity security holders of the Debtors required by FRBP 1007(a)(3).

7.      On July 7, 2010, the United States Trustee sent the Debtors a letter (the "July 7th Letter") enclosing a copy of the United States Trustee Operating Guidelines (the "Guidelines"). The Guidelines outline the requirements for debtors-in-possession.

**Proof of Insurance**

8.      Beginning on July 12, 2011, the United States Trustee repeatedly requested proof that the Debtors had adequate insurance in place.  See Ex. A.

9.      The United States Trustee received documentation of the following insurance on July 14, 2011:

| **Insured:** USA United Fleet, Inc. | | | |
|---|---|---|---|
| **Type of Insurance** | **Insurer** | **Policy Number** | **Policy Term** |
| Property | Firemans Fund Insurance Co. | MXI97121716 | 1/1/2011 to 1/1/2012 |
| Inland Marine | Firemans Fund Insurance Co. | MXI97121716 | 1/1/2011 to 1/1/2012 |
| Commercial General Liability | Colony Insurance Company | AR3360452 | 1/1/2011 to 1/1/2012 |
| Umbrella Liability | Colony Insurance Company | AR 3460733 | 1/1/2011 to 1/1/2012 |
| **Insured:** United Fleet, Inc. | | | |
| Automobile | Carolina Casualty Insurance Company | CPN623852[1] | 6/30/11 to 6/30/2012 |

See Ex. B.

---

[1]      Several copies of the Certificates of Liability Insurance were provided listing various Certificate Holders and Descriptions of Operations/Locations/Vehicles.  The buses specifically listed represent a fraction of the Debtors' fleet.

4

10. The United States Trustee has not received any proof of workers' compensation insurance, any proof of insurance for any of the Debtors other than USA United Fleet Inc. and United Fleet Inc., or any proof that all of the Debtors' buses are covered by valid automobile insurance. See Ex. B and E.

**Initial Lack of Disclosure**

11. On the Petition Date, pursuant to Rule 1007-4 of the Local Rules, the Debtors filed Moran's declaration (the "Moran Declaration") in support of the Petitions. See Case No. 11-45867, ECF No. 2.

12. The Moran Declaration again identified Moran only as the comptroller of each of the Debtors, and described the Debtors as a "family-owned operation." Id., ¶¶ 1 and 19.

13. The Moran Declaration identified the Debtors' assets to include: (a) bank accounts with a de minimus balance, (b) accounts receivable valued at approximately $5,465,000.00, (c) various machinery and equipment with an approximate value of $450,000.00, (d) various buses and other vehicles with an approximate value of $10,000,000.00 and six contracts (the "Contracts") with the D.O.E. with a value of $2,715,000.00. Id., ¶¶ 10 and 20.

14. The Moran Declaration disclosed three secured creditors: (a) Comerica Bank ("Comerica"), with a secured claim of $10,926,375.12, (b) All Points Capital Corp., with no amount disclosed and (c) the United States Internal Revenue Service, with no amount disclosed. Id., ¶ 9.

15. The Moran Declaration cited three reasons for the filing of the Petitions: (a) the embezzlement of funds by a payroll company, (b) the demand of the Amalgamated Transit Union Local 1181-1061, AFL-CIO (the "Union") for a $1.2 million security deposit, and (c) Comerica's notice of assignment of accounts receivable to the D.O.E., directing that the D.O.E.

make $5 million in payments, allegedly due to the Debtors under the Contracts, directly to Comerica.  Id., ¶ 48.  Although not directly acknowledged as a reason for the filings, the Moran Declaration also disclosed that, on June 30, 2011, Comerica commenced an action in the United States District Court for the Eastern District of New York seeking monies allegedly due and the appointment of a receiver to take control of the Debtor's assets.  Id., ¶ 14.

16.     According to the Moran Declaration, the Contracts, "accounted for 100% of the Debtors' revenues from all of its transportation operations in fiscal year 2010."  Id., ¶ 20.

17.     The Moran Declaration did not disclose that at the time of filing, the Debtors had 1) assigned the Contracts to non-debtor entities Northeast Transit, Inc., Northeast Buses Inc. and Northern Transit (the "Northeast Entities") owned and controlled by Moran (the "Assignments"), 2) entered into an agreement leasing all, or substantially all, of the Debtors' buses to the Northeast Entities (the "Bus Lease"), and 3) two days prior to the Petition Date, been acquired by Moran as sole shareholder (the "Equity Transfer").  See Case No. 11-45867, ECF No. 2.

**The Cash Collateral Motion**

18.     On the Petition Date, the Debtors filed a motion, pursuant to 11 U.S.C. §§ 105, 361, 362 and 363, seeking authorization for the use of Comerica's cash collateral (the "Cash Collateral Motion").  See Case No. 11-45867, ECF No. 3.

19.     The Debtors acknowledged in the Cash Collateral Motion that Comerica has a first priority security interest in substantially all of the Debtors' assets, "including, but not limited to, all accounts, general intangibles, inventory, equipment, fixtures, software, goods, money, deposits, and all products and proceeds of the foregoing . . ."  Id., ¶ 10.

20. The Cash Collateral Motion did not disclose the Assignments, the Bus Lease, or the Equity Transfer. Id.

21. Although the Debtors, Comerica and the United States Trustee engaged in discussions regarding the consensual use of cash collateral, the discovery of the Assignments terminated those discussions.

22. The Court has not issued an order granting the Cash Collateral Motion, nor has Comerica consented to the Debtors' use of its cash collateral.

**The Pre-Petition Wage Motion**

23. On the Petition Date, the Debtors filed a motion, pursuant to 11 U.S.C. §§ 105, 363(b) and 507, seeking, inter alia, authorization to pay pre-petition wages to the Debtors' employees, including insiders, together with related withholdings and deductions (the "Wage Motion"). See Case No. 11-45867, ECF No. 5.

24. The Wage Motion did not disclose the Assignments, the Bus Lease, or the Equity Transfer. Id.

25. Both the United States Trustee and Comerica raised informal objections to any payments to insiders pursuant to the Wage Motion and engaged in discussions regarding the consensual payment of pre-petition wages to non-insiders, but issues related to the Assignments terminated those discussions.

26. The Court has not issued an order granting the Wage Motion.

**The July 8th Hearing**

27. The Court scheduled an interim hearing on both the Cash Collateral and Wage Motions for July 8, 2011 (the "July 8th Hearing"). See Case No. 11-45867, ECF No. 5.

28.     During the course of preparation for the July 8th Hearing, the United States

Trustee and, upon information and belief, Comerica, first became aware of the possible existence

of the Assignments.

29.     Primarily based upon the uncertainty created by the Assignments, the Court did

not grant any relief at the July 8th Hearing.

**The Motion to Enforce the Automatic Stay or Merge Entities**

30.     On July 13, 2011, the Debtors filed a motion (the "Merger Motion") seeking (a)

pursuant to 11 U.S.C. § 362, enforcement of the automatic stay with respect to the D.O.E. or (b)

in the alternative to authorize, pursuant to 11 U.S.C. § 363, a merger of the Debtors with the

Northeast Entities.  See Case No. 11-45867, ECF No. 15.

31.     The Merger Motion disclosed the Assignments in writing for the first time.  Id.,

¶¶ 14 - 16.  The Merger Motion revealed that on or about August 5, 2010, the Debtors agreed to

assign the Contracts, which included all rights with respect to the bus routes granted to the

Debtors by the D.O.E., to the Northeast Entities, subject to D.O.E. approval.  Id., ¶ 14.

32.     The Debtors allege that between August 2010 and June 30, 2011, they attempted,

on numerous occasions and without success, to determine the status of the pending Assignments.

Id., ¶ 15.

33.     The Debtor's further allege that, "[a]fter the D.O.E. spent more than four months

refusing to give the Debtors any information on the status of the Assignments, the Debtors

reluctantly accepted that the D.O.E. would never register the assignments, and filed their

petitions on July 6, 2011."  Id.

34.     The Merger Motion also disclosed the Equity Transfer for the first time, stating

that, notwithstanding Moran's identification of himself only as the comptroller of each of the

Debtors and his description of the Debtors as a "family-owned operation," on July 4, 2011, two days prior to the Petition Date, "Dana Pristavec, the sole shareholder of the Debtors, conveyed her interests in the Debtors to William Moran." Id., ¶ 14.

35.     In support of the Merger Motion, the Debtors first argued that, based primarily upon the purported representations of an attorney for the City of New York, the Assignments would not be effective until July 18, 2011 and that, due to the existence of the automatic stay, the Assignments could and would never become effective. Id., ¶ 27.

36.     Alternatively, the Debtors' argued that they should be permitted, over the D.O.E.'s objection, to merge the Debtors with the Northeast Entities, thereby, in effect, returning the Contracts to the control of the Debtors. Id., ¶ 32.

37.     On July 14, 2011, the City of New York filed an objection (the "City Objection") to the Merger Motion. See Case No. 11-45867, ECF No. 22.

38.     The City Objection first puts to rest the issue of whether the Assignments are effective and, thus, whether the Contracts are property of the Debtors' estates. The Affidavit of Lisa D'Amato, the Director of Contract Management/Office of School Support for the D.O.E., submitted in support of the City Objection, attests to the following time line:

| Date | Action |
|---|---|
| October 18, 2011 | Original request for approval of the Assignments. |
| February 27, 2011 to March 1, 2011 | Debtors and Northeast Entities sign assignment papers. |
| March 14, 2011 | D.O.E. approves assignments. |
| July 1, 2011 | Assignments are registered with the New York City Comptroller. |

<u>See</u> Ex C.

39.     Further clarification is gained from the Affidavit of John Guerrero, the Supervisor of Contract Registration in the Division of Contracts and Purchasing for the D.O.E., submitted in support of the City Objection, which attests that the Contracts were registered with the New York City Comptroller between June 28, 2011 and June 30, 2011, which made them binding contracts.  <u>See</u> Ex D.

40.     In response to the Debtor's alternative argument in the Merger Motion, the City Objection stated that the City did not consent to the merger, and argued that the Debtor has presented insufficient grounds upon which the Court could approve such a transaction.  <u>See</u> Case No. 11-45867, ECF No. 22.

41.     On July 15, 2011, the Court denied the Merger Motion and directed the City of New York to settle an order.

**Additional Examples of the Debtors' Gross Mismanagement**

42.     According to the Bus Lease provided to the United States Trustee, on March 1, 2011, the Debtors leased all, or substantially all, of their buses to the Northeast Entities.  <u>See</u> Ex. E.  The Bus Lease also references a "Transaction Agreement."  <u>Id.</u>  Despite the United States Trustee's request, the Debtor has not provided copies of the Transaction Agreement.  Therefore, the United States Trustee cannot verify whether it has or hasn't been executed.  <u>Id.</u>

43.     On July 7, 2011, the Debtors paid pre-petition wages without a Court authorization.  <u>See</u> Ex. F.

44.     When Comerica, the United States Trustee and others sought explanation of how the Debtors, who purportedly had little or no cash on hand as of the Petition Date, and had no authority to use cash collateral, could have funded payroll one day later, the Debtor provided an

email that indicating that they had borrowed, without disclosure or Court authority, at least $152,000.00, and used $90,000.00 from the "release of restricted funds."  <u>See</u> Ex. G.

45.     On July 7, 2011, the day after the Petition Date and the day after signing the Moran Declaration under penalty of perjury, which failed to disclose the Assignments, the Bus Lease or the Equity Transfer, Moran was emailing the D.O.E., in his Northeast Entities capacity, regarding final details of the Assignments including the re-lettering buses, providing emergency contact cards and transferring employees.  <u>See</u> Ex. H.

**Post-Petition Bank Accounts**

46.     The Debtor has failed to produce documents to the United States Trustee indicating that it has opened a debtor-in-possession bank account.

I declare under penalty of perjury that, to the best of my knowledge, the information contained in this Declaration is true and correct.

Dated: Brooklyn, New York
        July 20, 2011

                              */s/ Alicia M. Leonhard*
                              Alicia M. Leonhard