UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
In re:                                                    Chapter 11

LONG BEACH MEDICAL CENTER, *et al.*,[1]          Case Nos. 14-70593-AST
                                                                   14-70597-AST

                                    Debtors.         (Jointly Administered)
-----------------------------------------------------------------------X

**FINAL ORDER PURSUANT TO SECTIONS 105, 361, 362, 363, AND
364 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002,
4001, AND 9014 (I) AUTHORIZING INCURRENCE BY THE DEBTORS
OF POSTPETITION SECURED INDEBTEDNESS WITH PRIORITY
OVER ALL SECURED INDEBTEDNESS AND WITH ADMINISTRATIVE
SUPERPRIORITY, (II) AUTHORIZING THE USE OF CASH COLLATERAL,
(III) GRANTING LIENS, AND (IV) MODIFYING THE AUTOMATIC STAY**

Upon the motion, dated February 19, 2014 (the "DIP Motion") by Long Beach Medical

Center and Long Beach Memorial Nursing Home, Inc. d/b/a The Komanoff Center for Geriatric

and Rehabilitative Medicine (each a "Debtor" and, collectively, the "Debtors") in the above-

captioned Chapter 11 cases (collectively, the "Chapter 11 Cases"), seeking, among other things,

entry of an Final Order (this "Final Order"):

(i)      authorizing the Debtors, under the DIP Facility (as defined below), to

obtain credit and incur debt, pursuant to Sections 363, 364(c), and 364(d) of the title 11 of the

United States Code (the "Bankruptcy Code"), on a Final basis up to the aggregate amount of

$4,500,000 secured, and subject to the terms and conditions contained herein,

a.   pursuant to Bankruptcy Code § 364(c)(2), subject to the Carve-Out, as
defined herein, by a first-priority senior perfected lien on, and security

---

[1]      The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification
number, are:  Long Beach Medical Center (5084) and Long Beach Memorial Nursing Home, Inc., d/b/a The
Komanoff Center for Geriatric and Rehabilitative Medicine (3422).

interest in all present and after-acquired assets and property of the Debtors not subject to a lien on the Petition Date, excluding causes of action under Chapter 5 of the Bankruptcy Code ("Avoidance Actions") and the proceeds of Avoidance Actions; as well as any insurance proceeds and restricted funds maintained in any segregated account(s) which may only be used for a specific purpose as proscribed by FEMA or any other Governmental Entity, together with the rights to such funds and the segregated account(s) in which they are maintained (the "FEMA Restricted Funds");  and

b.   pursuant to Bankruptcy Code § 364(d)(1), subject to the Carve-Out, by a first-priority, senior priming perfected lien on, and security interest in, all personal and real property of Long Beach Memorial Nursing Home, Inc. d/b/a The Komanoff Center for Geriatric and Rehabilitative Medicine (the "Komanoff Collateral") that is subject to the lien of the Pension Benefit Guaranty Corporation (the "PBGC"), the Lender, and any other secured creditors holding a valid, prepetition security interest in the Komanoff Collateral (collectively, the "Komanoff Prepetition Secured Creditors"), excluding Avoidance Actions and the proceeds of Avoidance Actions as well as any FEMA Restricted Funds;  and

c.   pursuant to Bankruptcy Code § 364(c)(3), subject to the Carve-Out, by a lien on, and security interest in, all other property of the Debtors that is subject to valid, perfected liens, excluding Avoidance Actions and the proceeds of Avoidance Actions as well as any FEMA Restricted Funds;  and

d.   by claims, entitled to the benefits of Bankruptcy Code § 364(c)(1), having a super-priority ("Super-Priority Claims") over any and all administrative expenses of the kind specified in Bankruptcy Code 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113, 1114 or any other provision of the Bankruptcy Code, subject only to the Carve-Out, as defined herein, and excluding Avoidance Actions and the proceeds of Avoidance Actions as well as any FEMA Restricted Funds;

(ii)    (a) authorizing the Debtors to obtain such post-petition financing (the

"DIP Facility") pursuant to (I) that certain Debtor In Possession Loan and Security Agreement

(the "DIP Credit Agreement"),[2] substantially in the form attached to the DIP Motion as Exhibit A, by and among the Long Beach Medical Center and Long Beach Memorial Nursing Home, Inc., d/b/a the Komanoff Center for Geriatric and Rehabilitative Medicine (collectively, the "Borrower") and South Nassau Communities Hospital (the "Lender"), and (II) all other agreements, documents, and instruments to be executed and/or delivered with, to, or in favor of the Lender (all documents comprising the DIP Facility, each as may be amended, modified, or supplemented and in effect from time to time, collectively, the "DIP Financing Documents"); (b) authorizing the Debtors to incur the "DIP Loan Obligations" under and as defined in the DIP Credit Agreement and this Final Order; and (c) authorizing the Debtors to execute and deliver the DIP Financing Documents and to perform such other acts as may be necessary or desirable in connection therewith;

(iii)    (a) authorizing the Debtors to use any cash collateral in which the Lender, the PBGC, and any of the Komanoff Prepetition Secured Creditors have a valid, perfected security interest that the Debtors are holding or may obtain ("Cash Collateral"), all in accordance with the terms of this Final Order, and (b) authorizing the use of the proceeds of the DIP Facility and Cash Collateral in each case in a manner consistent with the terms and conditions of the DIP Financing Documents and this Final Order as applicable, and in strict compliance with the Budget (as defined below) solely for the purposes set forth in the DIP Financing Documents including for (a) working capital and other general corporate purposes to the extent set forth in the Budget and approved by the Lender and (b) payments of costs of administration of the Chapter 11 Cases, to the extent set forth in the Budget;

---

[2]    Capitalized terms used but not otherwise defined in this Final Order shall have the meanings ascribed to such terms in the DIP Credit Agreement.

(iv)    vacating and modifying the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Financing Documents and this Final Order;

(v)    authorizing the Debtors to grant the Lender, the PBGC, and any of the Komanoff Prepetition Secured Creditors that have a valid, perfected security interest in the Komanoff Collateral, adequate protection, on account of the grant to the Lender of a priming lien on the Komanoff Collateral and/or the use of Cash Collateral, as applicable, in the form of replacement liens and claims, entitled to the benefits of Bankruptcy Code § 364(c)(1)**,** having a super-priority, excluding Avoidance Actions and the proceeds of Avoidance Actions as well as any FEMA Restricted Funds;

(vi)    waiving any applicable stay as provided in the provisions of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and providing for the immediate effectiveness of this Final Order.

The Bankruptcy Court having considered the DIP Motion, the Declaration of Douglas Melzer, the President and CEO of the Debtors, in support of the Debtors' first day motions and order, the exhibits attached thereto, the DIP Credit Agreement, the statements made by Debtors' counsel, and the evidence submitted by the Debtors at the hearings held before the Court on February 21, 2014 (the "Emergency Hearing") and March 10, 2014 (the "Final Hearing"); and, in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014 and the Local Bankruptcy Rules for the Eastern District of New York (the "Local Rules"), due and proper notice of the DIP Motion and the Emergency Hearing and Final Hearing having been given; and the Emergency Hearing and Final Hearing having been held and concluded; and it

appearing that approval of the relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtors, and otherwise is fair and reasonable and in the best interests of the Debtors, their creditors, and their estates, and is essential for the continued operation of the Debtors' business and to preserve and maximize the value of the Debtors' estates for the benefit of all stakeholders; and it further appearing that the Debtors are unable to secure unsecured credit for money borrowed allowable as an administrative expense under Section 503(b)(1) of the Bankruptcy Code; and it appearing that there is adequate protection of the interests of holders of liens on the property of the estates on which liens are to be granted; and all objections, if any, to the entry of this Final Order having been withdrawn, resolved, or overruled by this Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

IT IS HEREBY FOUND AND DETERMINED THAT:

A.    **Petition Date.**  On February 19, 2014 (the "Petition Date"), the Debtors each filed a voluntary petition under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court").  The Debtors are continuing in the management and operation of their businesses and/or property as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  Pursuant to an order of this Court, the Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered.  No trustee or examiner has been appointed in the Chapter 11 Cases.

B.    **Jurisdiction and Venue.**  This Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. § 1334, and over the persons and property affected hereby. Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).

Venue for the Chapter 11 Cases and proceedings on the DIP Motion are proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     **Statutory Committee.**  On February 28, 2014, the United States Trustee for the Eastern District of New York appointed a statutory committee of unsecured creditors (the "Statutory Committee") in the Chapter 11 Cases.

D.     **Notice.**  The Final Hearing was held pursuant to Bankruptcy Rule 4001 and Local Rule 4001-1.  Notice of the Final Hearing and the relief requested in the DIP Motion has been provided by telecopy, email, overnight courier, or hand delivery to certain parties in interest, including:  (a) the Debtors' thirty (30) largest unsecured creditors (on a consolidated basis); (b) each of the Debtors' creditors; (c) the Office of the United States Trustee for the Eastern District of New York; (d) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002; (e) the following state and local taxing and regulatory authorities: (i) the Centers for Medicare and Medicaid Services, (ii) the New York State Department of Health, (iii) the United States Attorney for the Eastern District of New York, (iv) the attorney General of the State of New York, (v) Corporation Counsel for the City of Long Beach, (vi) the New York State Department of Labor (the "DOL"), (vii) the PBGC, (viii) the Dormitory Authority of the State of New York (the "DASNY"), (ix) the Internal Revenue Service, (x) the New York State Department of Taxation and Finance; (f) counsel to the Buyer; (g) the United States Department of Justice, Commercial Litigation Division; (h) the United States Department of Health and Human Services; (i) International Union of Operating Engineers, Local 30; (j) 1199 SEIU Healthcare Workers East;  and (l) counsel for the Statutory Committee (collectively, the "Notice Parties").  Under the circumstances, such notice of the Final Hearing and the relief requested in

6

the DIP Motion is due and sufficient notice and complies with Sections 102(1), 363, 364(c), and

364(d) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(b), 4001(c), 4001(d), and the

Local Rules.

    E.  **Debtors' Acknowledgements and Agreements.** Without prejudice to the

rights of the Statutory Committee as set forth in paragraph 6, the Debtors admit, stipulate,

acknowledge, and agree that (collectively, paragraphs E(i) through E(iii) hereof shall be referred

to herein as the "<u>Debtors' Prepetition Lien Stipulations</u>"):

    (i)  **Prepetition Credit Agreement.** Prior to the Petition Date, the Debtors were party to that certain Loan and Security Agreement, dated as of December 30, 2013 (the "<u>Prepetition Credit Agreement</u>," and, together with all other agreements, documents, and instruments executed and/or delivered to or in favor of the Lender in connection therewith, collectively, the "<u>Prepetition Credit Documents</u>"), among the borrowers listed therein and South Nassau Communities Hospital (the Lender).  Pursuant to the Prepetition Loan Agreement, the Lender agreed to make available to the Borrowers therein a secured line of credit in the amount of up to $1,500,000.

    (ii)  **Liens Securing Prepetition Loan.** Pursuant to the Prepetition Credit Documents, to secure the obligations described thereunder (the "<u>Prepetition Obligations</u>"), the Debtors granted to the Lender liens on and security interests in substantially all assets of the Debtors, whether then owned or thereafter created, acquired, or arising, and all accessions and proceeds thereof (all collateral granted pursuant to the Prepetition Credit Documents, the "<u>Prepetition Collateral</u>"), including, but not limited to, the following (with each of the following terms having the meanings ascribed thereto in the Prepetition Credit Documents):  (i) all Accounts; (ii) all cash and currency; (iii) all Chattel Paper; (iv) all Deposit Accounts; (v) all Documents; (vi) all Equipment; (vii) all Fixtures; (viii) all General Intangibles; (ix) all Instruments; (x) all Inventory; (xi) all Investment Property; (xii) all Letter-of-Credit Rights; (xiii) all Goods; (xiv) all oil, gas, or other minerals before extraction; (xv) all pledged equity; (xvi) all other Property and assets owned by such Borrower (including real property); and (xvii) all Accessions and all Proceeds of any and all of the foregoing.  The liens and security interests granted to the Lender pursuant to the Prepetition Credit Documents are referred to as the "<u>Prepetition Secured Liens</u>."

    (iii)  **Validity, Perfection, and Priority of Prepetition Secured Liens and Prepetition Obligations.** As of the Petition Date, (i) the Prepetition Secured Liens are valid, binding, enforceable, non-avoidable, and properly perfected; (ii)

7

the Prepetition Secured Liens are not subject to avoidance, recharacterization, subordination, or other challenge pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (iii) the Prepetition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors, enforceable in accordance with the terms of the Prepetition Credit Documents (other than in respect of the stay of enforcement arising from Section 362 of the Bankruptcy Code), and are not subject to any objection, offset, defense or counterclaim of any kind, and no portion of the Prepetition Obligations is subject to avoidance, disallowance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (iv) the Prepetition Obligations constitute allowed secured claims pursuant to Section 506 of the Bankruptcy Code to the extent of the value of their interest in the Prepetition Collateral.  On the date that this Final Order is entered, each Debtor has waived, discharged, and released the Lender, together with their affiliates, agents, attorneys, officers, directors and employees, of any right any Debtor may have (x) to challenge or object to any of the Prepetition Obligations or any security therefor, and (y) to bring or pursue any and all claims, objections, challenges, causes of action, and/or chooses in action arising out of, based upon or related to the Prepetition Credit Agreements or otherwise.  The Debtors do not possess and will not assert any claim, counterclaim, setoff, objection, challenge, cause of action or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Prepetition Credit Documents or the Prepetition Secured Liens, or any claim of the Lender and/or any of its respective affiliates, parents, subsidiaries, agents, attorneys, advisors, professionals, officers, directors, and employees (in their respective capacities as such) pursuant to the Prepetition Credit Documents.

F.      Findings Regarding the Postpetition Financing.

(a)     **Need for Postpetition Financing and Use of Cash Collateral.**

An immediate need exists for the Debtors to obtain funds under the DIP Facility and to use Cash

Collateral in order to continue remaining operations and to administer and preserve the value of

the Debtors' estates.  The ability of the Debtors to finance their remaining operations, and to

preserve, maintain, and maximize the value of their assets for the benefit of their creditors

requires the immediate availability of working capital provided pursuant to the DIP Facility.  The

inability to obtain funding under the DIP Facility and the use of Cash Collateral would

immediately and irreparably harm the Debtors, their estates, and their creditors, and irreparably

damage the Debtors' prospects for confirmation of a Chapter 11 plan and/or an efficient and

orderly sale or other disposition of their assets as a going concern or otherwise. Without immediate access to the DIP Facility, the Debtors have insufficient funds available to sustain operations of any magnitude for any length of time. The Debtors have advised that, absent approval of the DIP Facility on a final basis, they would immediately cease all remaining operations, terminate all employees and convert the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code.

(b)     **No Credit Available on More Favorable Terms.** The Debtors are unable to obtain unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense. Given their current financial condition, financing arrangements, and capital structure, the Debtors are unable to obtain secured credit pursuant to Sections 364(c)(2), 364(c)(3), and 364(d) on more favorable terms and conditions than those provided in the DIP Financing Documents and this Final Order. Financing on a postpetition basis is not otherwise available without granting to the Lender (a) perfected security interests in and liens on all of the Debtors' existing and after-acquired assets with the priorities set forth in this Final Order, (b) super-priority claims with the priorities set forth in this Final Order, and (c) the other protections, rights, and remedies set forth in the DIP Financing Documents and this Final Order.

G.     **Use of Proceeds of the DIP Facility.** Proceeds of the DIP Facility shall be used in a manner consistent with the terms and conditions of the DIP Credit Agreement, and in strict compliance with the Budget and limitations set forth in this Final Order, solely for (i) working capital and other general corporate purposes including, without limitation, payment for operating expenses and employee wages, and (ii) permitted payment of costs of

administration of the Chapter 11 Cases, including professional fees, to the extent set forth in the Budget.

H.    **Application of Proceeds of DIP Collateral.**  All proceeds of a sale or other disposition of the DIP Collateral (as defined below), shall be applied:  (a) first, to reduce the DIP Loan Obligations pursuant and subject to the provisions of the DIP Credit Agreement; and (b) second, to reduce debt owed to the other prepetition secured creditors holding valid, perfected, and enforceable liens on the Debtors' assets, including the Lender's Prepetition Secured Liens, (collectively, the "Prepetition Secured Creditors") in order of priority.

I.    **Adequate Protection.** The priming of all valid, perfected, and enforceable liens in the Komanoff Collateral pursuant to Section 364(d) of the Bankruptcy Code, as further described below, and Debtors' use of Cash Collateral enable the Debtors to obtain the DIP Facility, to continue remaining operations, and to maximize the value of their assets for the benefit of their estates and creditors. The Lender has consented to such priming liens, and the PBGC and the Komanoff Prepetition Secured Creditors, having not objected, are being provided adequate protection pursuant to Sections 361, 363, and 364 of the Bankruptcy Code, for any diminution in the value of their respective interests in the Komanoff Collateral resulting from the subordination to the Carve Out (as defined here) and the DIP Liens, the Debtors' use, sale or lease of such Komanoff Collateral and Cash Collateral, and the imposition of the automatic stay (collectively, and solely to the extent of any such diminution in value the "Diminution in Value").  Pursuant to Sections 361, 363, and 507(b) of the Bankruptcy Code, as adequate protection to the extent of any Diminution in Value of their respective interests in the Komanoff Collateral and Cash Collateral, the Lender, the PBGC and the other Komanoff Prepetition

Secured Creditors, holding a valid, perfected security interest in the Komanoff Collateral, will receive the rights and protections set forth in this Final Order, including pursuant to paragraph 3 of this Final Order.

   J.  **Section 506(c) and Section 552.** In light of its agreement to subordinate its liens and super-priority claims to the Carve-Out, the Lender is entitled to (a) all of the rights and benefits of Section 552(b) of the Bankruptcy Code and the "equities of the case" exception shall not apply with respect to the Prepetition Secured Lien and (b) a waiver of the provisions of Section 506(c) of the Bankruptcy Code.

   K.  **Extension of Financing.** The Lender has indicated a willingness to provide financing to the Debtors in accordance with the DIP Credit Agreement and subject to (i) the entry of this Final Order, and (ii) findings by the Bankruptcy Court that such financing is essential to the Debtors' estates, that the Lender is a good faith financier, and that the super-priority claim, security interests, and liens and other protections granted to the Lender pursuant to this Final Order and the DIP Facility will not be affected by any subsequent reversal or modification of this Final Order unless the Final Order is stayed pending appeal, as provided in Section 364(e) of the Bankruptcy Code.

   L.  **Business Judgment and Good Faith Pursuant to Section 364(e).**

(i) The terms and conditions of the DIP Facility and the DIP Credit Agreement are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration; (ii) the DIP Facility was negotiated in good faith and at arms' length between the Debtors and the Lender; and (iii) use of the proceeds to be

extended under the DIP Facility will be so extended in good faith, and for valid business purposes and uses, as a consequence of which the Lender are entitled to the protection and benefits of Section 364(e) of the Bankruptcy Code.

M.    **Relief Essential; Best Interest; Good Cause.**  The relief requested in the DIP Motion is necessary, essential, and appropriate for continued operations, and for the management, maintenance, and preservation of the Debtors' assets and property.  It is in the best interest of the Debtors' estates for the Debtors to be allowed to establish the DIP Facility contemplated by the DIP Credit Agreement.  Good cause has been shown for the relief requested in the DIP Motion and as granted in this Final Order.

Based upon the foregoing findings and conclusions, and the record before the Court with respect to the DIP Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:

1.    **Motion Granted**.  The DIP Motion is hereby granted in accordance with the terms and conditions set forth in this Final Order and the DIP Financing Agreements.

2.    **DIP Facility Authorization**.

(a)    **Approval of Entry Into DIP Financing Agreements.**  The Debtors are expressly and immediately authorized, empowered, and directed to execute and deliver the DIP Financing Documents and to incur and to perform the DIP Loan Obligations in accordance with, and subject to, the terms of this Final Order and the DIP Financing Documents, and to execute and deliver all instruments and documents which may be required or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the

12

DIP Liens described in and provided for by this Final Order and the DIP Financing Documents. The Debtors are hereby authorized and directed to do and perform all acts, pay the principal, interest, fees, expenses, and other amounts described in the DIP Financing Documents, which amounts (a) shall not be subject to or require further approval of this Court.  All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations, or otherwise, will be applied as required by this Final Order and DIP Financing Documents. The DIP Financing Documents shall represent valid and binding obligations of the Debtors enforceable against the Debtors in accordance with their terms.

(b)     **Authorization to Borrow.**  Subject to the terms, conditions, limitations on availability, and reserves set forth in the DIP Financing Documents and this Final Order, upon the execution of the DIP Credit Agreement and the other DIP Financing Documents, the Debtors are hereby authorized to borrow up to a total amount of $4,500,000 under the DIP Facility.

(c)     **Authorization for Use of Cash Collateral.**  The Debtors shall be authorized to use the Cash Collateral derived from the operations of the Debtors and their real and personal property in accordance with the terms of this Final Order in accordance with the Budget.  For purposes of this Final Order, Cash Collateral includes (a) all cash proceeds of Prepetition Collateral in which the Lender, PBGC and the other Komanoff Prepetition Secured Creditors holding an interest, whether such interest existed as of the Petition Date or arises thereafter pursuant to this Final Order, any other order of this Court, applicable law or otherwise, and (b) amounts provided by the Lender pursuant to the Prepetition Credit Agreement.

(d)    **Budget.**  All borrowing under the DIP Facility and the use of Cash Collateral shall be in strict compliance with the budget attached hereto as <u>Exhibit A</u> (as the same may be modified from time to time consistent with the terms of the DIP Credit Agreement, and with the consent of the Lender, the "<u>Budget</u>"), and the Debtors shall not use any portion of the proceeds of the DIP Facility, directly or indirectly, in excess of the amounts set forth in the Budget, except (and strictly to the extent of) any variance permitted under the DIP Credit Agreement.  The Budget may be updated and amended (with the consent and/or at the request of the Lender) from time to time, provided that such updated or amended Budget shall be in form and substance acceptable to the Lender, and the Debtors shall be required always to comply strictly with the Budget and the DIP Credit Agreement.  The Debtors shall also provide a copy of any amended and/or updated Budget to the United States Trustee and the Statutory Committee. Notwithstanding any "first day" or subsequent orders entered by the Bankruptcy Court authorizing the Debtors to pay any prepetition or other claims and expenses, all such payments shall be made only to the extent they are in strict compliance with the Budget.

(e)    **Application of DIP Proceeds and Collections.**  The proceeds of the DIP Facility and the collection of account receivables shall be used, in each case in a manner consistent with the terms and conditions of the DIP Financing Agreements, and in strict compliance with the Budget and the limitations set forth in this Final Order, solely for (i) working capital and other general corporate purposes including, without limitation, payment for operating expenses, and employee wages as approved by the Lender, and (ii) payment of costs of administration of the Chapter 11 Cases, including professional fees, to the extent set forth in the Budget.

14

(f)    **Conditions Precedent.**  The Lender shall have no obligation to make any loan or advance under the DIP Credit Agreement unless the conditions precedent to the making of such loan under the DIP Credit Agreement have been satisfied in full or waived by the Lender in its sole discretion.

(g)    **DIP Liens and DIP Collateral.**  Effective immediately upon the execution of this Final Order, pursuant to Sections 361, 362, 364(c)(2), 364(c)(3), and 364(d)(1) of the Bankruptcy Code, the Lender and the Dormitory Authority of the State of New York ("<u>DASNY</u>") to the extent necessary as assignee, is hereby granted continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition liens on and security interests in (collectively, the "<u>DIP Liens</u>") any and all presently owned and hereafter acquired property and assets of the Debtors, whether real or personal, tangible or intangible, and wherever located, and all, cash and Cash Collateral, proceeds, products, offspring, rents, proceeds of interests in leaseholds and profits thereof, and including, without limitation, the following (all collateral described in this paragraph 2(g) collectively, the "<u>DIP Collateral</u>"):[3] (i) all Prepetition Collateral, (ii) all Collateral (as defined in the DIP Financing Agreements),  and (iii) all claims and causes of action of the Debtors and their estates, and all proceeds thereof, except for Avoidance Actions and the proceeds of Avoidance Actions as well as any FEMA Restricted Funds.

(h)    **DIP Lien Priority**.  The DIP Liens securing the DIP Loan Obligations shall be

---

[3]    All defined terms in the description of DIP Collateral shall have the meanings ascribed thereto in the DIP Financing Agreements.  All terms not specifically defined in the DIP Financing Documents shall have the meanings ascribed to such terms in Article 8 or 9 of the Uniform Commercial Code.

i. pursuant to Bankruptcy Code § 364(c)(2), subject to the Carve-Out, as defined herein, secured by a first-priority senior perfected lien on, and security interest in, all present and after-acquired assets and property of the Debtors not subject to a lien on the Petition Date, including cash, excluding Avoidance Actions and the proceeds of Avoidance Actions as well as excluding any FEMA Restricted Funds;  and

ii. pursuant to Bankruptcy Code § 364(d)(1), subject to the Carve-Out and the rights reserved by the Court, secured by a first-priority, senior priming perfected lien on, and security interest in Komanoff Collateral, excluding Avoidance Actions and the proceeds of Avoidance Actions as well as excluding any FEMA Restricted Funds;  and

iii. pursuant to Bankruptcy Code § 364(c)(3), subject to the Carve-Out, by a lien on, and security interest in, all other property of the Debtors that is subject to valid perfected liens as of the Petition Date, but excluding Avoidance Actions and the proceeds of Avoidance Actions as well as excluding any FEMA Restricted Funds;  and other than as set forth herein, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest by any order heretofore or hereafter entered in the Chapter 11 Cases and shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases, upon the conversion of any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code, and/or upon the dismissal of any of the Chapter 11 Cases.  The DIP Liens shall not be subject to Sections 506(c), 510, 549, or 550 of the Bankruptcy Code.

(i)    **DIP Super-Priority Administrative Claim**.  Subject only to the Carve-Out, all DIP Loan Obligations shall be an allowed super-priority administrative expense claim (the "DIP Super-Priority Claim" and, together with the DIP Liens, the "DIP Protections") with priority in the Chapter 11 Cases, under Sections 364(c)(1), 503(b), and 507(b) of the Bankruptcy Code and otherwise, over any and all administrative expenses of the kind specified in, arising, or ordered pursuant to Bankruptcy Code Sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113, or 1114, or any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment

16

lien or other non-consensual lien, levy, or attachment.  Other than the Carve-Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under Bankruptcy Code Sections 328, 330, and 331, or otherwise, that have been or may be incurred in these proceedings and no priority claims are, or will be, senior to, prior to or on a parity with the DIP Super-Priority Claim.  The DIP Super-Priority Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, including without limitation, all cash and causes of action and proceeds of causes of action, except for Avoidance Actions and all proceeds of Avoidance Actions as well as any FEMA Restricted Funds.

(j)    **Enforceable Obligations**.  The DIP Financing Documents shall constitute and evidence the valid and binding obligations of the Debtors, which obligations shall be enforceable in accordance with their terms against the Debtors, their creditors, their estates and any successors thereto (including without limitation, any trustee appointed in the Chapter 11 Cases .

3.    **Adequate Protection**.

(a)    **Adequate Protection Liens**.  Pursuant to Sections 361 and 363(e) of the Bankruptcy Code, but subject to the Carve-Out, as adequate protection of the interests of the Lender, the PBGC and the Komanoff Prepetition Secured Creditors holding a valid, prepetition security interest in the Komanoff Collateral, against any Diminution in Value, the Debtors hereby grant the Lender, the PBGC and the Komanoff Prepetition Secured Creditors a continuing, valid, binding, enforceable, and automatically perfected postpetition security interest in and lien on the Komanoff Collateral, except for claims and causes of action, and the proceeds

17

of claims and causes of action, if any, that may be asserted by the Debtors' estates against insiders of the Debtors', including current and former officers and directors (the "Insider Actions"),  Avoidance Actions and all proceeds of Avoidance Actions, as well as excluding any FEMA Restricted Funds, to the same extent, validity and priority as existed prior to the Petition Date (the foregoing lien, the "Adequate Protection Lien").

> (b)    **Priority of the Adequate Protection Lien**.  In accordance with the terms of this Final Order, the Adequate Protection Lien shall be junior only to:  (i) the Carve-Out, and (ii) the DIP Liens.

> (c)    **Adequate Protection Super-Priority Claims**.  As further adequate protection against any Diminution in Value of the Lender, the PBGC and the Komanoff Prepetition Secured Creditors that may hold a valid, prepetition security interest in the Komanoff Collateral, the Lender, the PBGC and the Komanoff Prepetition Secured Creditors that may hold a valid, prepetition security interest in the Komanoff Collateral, are hereby granted, as and to the extent provided by Sections 503(b) and 507(b) of the Bankruptcy Code, a separate allowed super-priority administrative expense claim in each of the Chapter 11 Cases (the foregoing super-priority claim, the "Adequate Protection Super-Priority Claim").  Except with respect to the DIP Liens, the DIP Super-Priority Claim, and Adequate Protection Lien, and subject to the Carve Out, the Adequate Protection Super-Priority Claim (i) shall have priority in all of the Chapter 11 Cases under Sections 105, 364(c)(1), 503(b), and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature of the kinds specified in or ordered pursuant to Sections 503(b) or 507(b) of the Bankruptcy Code, and, Section 506(c) of the Bankruptcy Code,

18

whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, and (ii) no costs or expenses of administration, including, without limitation, professional fees allowed and payable under Sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in these proceedings, and no priority claims are, or will be, senior to, prior to or on a parity with the Adequate Protection Super-Priority Claim. The Adequate Protection Super-Priority Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, excluding Insider Actions, Avoidance Actions and all proceeds of Avoidance Actions, as well as any FEMA Restricted Funds.

(d)    **Priority of Adequate Protection Super-Priority Claim**. In accordance with the terms of this Final Order, the Adequate Protection Super-Priority Claim shall be junior only to the Carve-Out and the DIP Super-Priority Claim.

4.    **Right to Credit Bid** The Lender shall have the right to "credit bid" (i) the Carve-Out as hereafter defined in paragraph 7 to the extent actually funded and (ii) the allowed amount of the DIP Loan Obligations in the manner set forth in the Asset Purchase Agreement (the "<u>APA</u>") and the Court's order approving the bidding procedures in connection with the APA, or during any sale of all or substantially all of the Prepetition Collateral, including without limitation, sales occurring pursuant to Section 363 of the Bankruptcy Code or included as part of any reorganization plan subject to confirmation under Section 1129(b)(2)(A)(iii) of the Bankruptcy Code or otherwise. Notwithstanding anything to the contrary contained herein, an amount equal to the quarterly fees required to be paid to the United States Trustee pursuant to 28 U.S.C. §1930(a)(6) for the period prior to the closing of the sale, any fees payable to the clerk of

19

the Bankruptcy Court on the date of the closing of the sale, and the fees payable to a chapter 7

trustee in an aggregate amount not to exceed $25,000, and any remaining amount for the

Professionals Carve Out Cap, as hereafter defined in paragraph 7, will be funded in cash by

Lender, which cash shall be held in escrow by Debtors' counsel to be used for the purposes as set

the forth in paragraph 7 hereof.  For the avoidance of doubt, notwithstanding the escrow of any

payments made in respect of the Carve-Out, such payments made in respect of the Carve-Out are

to be credited toward satisfaction of the purchase price under the APA.

5.    **Perfection of DIP Liens and Adequate Protection Liens**.

(a)    **No Filings Necessary to Perfect.**  This Final Order shall be

sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens

without the necessity of filing or recording any financing statement, deed of trust, mortgage, or

other instrument or document which may otherwise be required under the law of any jurisdiction

or the taking of any other action (including, for the avoidance of doubt, entering into any deposit

account control agreement or mortgage agreement) to validate or perfect the DIP Liens or to

entitle the DIP Liens to the priorities granted in this Final Order.  Notwithstanding the foregoing,

the Lender may, each in its sole discretion, file such financing statements, mortgages, notices of

liens, and other similar documents to perfect in accordance with applicable non-bankruptcy law

or to otherwise evidence the applicable DIP Liens, and are hereby granted relief from the

automatic stay of Section 362 of the Bankruptcy Code solely in order to do so, and all such

financing statements, mortgages, notices and other documents shall be deemed to have been filed

or recorded as of the Petition Date.

(b)     **Debtors' Cooperation With Perfection Filings**.  The Debtors shall execute and deliver to the Lender, all such financing statements, mortgages, notices and other documents as such parties may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of, the DIP Liens.  The Lender, in its discretion, may file a photocopy of this Final Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property, and in such event, the recording officer shall be authorized to file or record such copy of this Final Order.

6.     **Reservation of Certain Third Party Rights and Bar of Challenges and Claims**.

(a)     Challenge Period.  The Statutory Committee is hereby granted standing , solely in accordance with this paragraph 6, to assert claims against the Lender on behalf of the Debtors, their creditors, or interest holders or to otherwise challenge any of the Debtors' Prepetition Lien Stipulations.  The Statutory Committee raising such objection or challenge, including without limitation, asserting any claim against the Lender in the nature of a setoff, counterclaim, or defense to, as applicable, the Prepetition Obligations (including, but not limited to, those under Sections 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code or by way of suit against the Lender), by April 29, 2014, or such later date consented to in writing by the Lender (the "Challenge Period").  The date that is the next calendar day after the termination of the Challenge Period, in the event that no objection or challenge is raised during the Challenge Period, shall be referred to as the "Challenge Period Termination Date."  Upon the Challenge Period Termination Date, any and all such challenges, claims, causes of action, and

objections by any party (including, without limitation, the Statutory Committee, any Chapter 11 or Chapter 7 trustee appointed herein and any other party in interest) as against the Lender shall be deemed to be forever waived and barred, and the Prepetition Obligations shall be deemed to be allowed in full as secured claims within the meaning of Section 506 of the Bankruptcy Code for all purposes in connection with the Cases, and the Debtors' Prepetition Lien Stipulations shall be binding on all creditors, interest holders, and parties in interest (including, without limitation, the Statutory Committee, any Chapter 11 or Chapter 7 trustee appointed herein). Notwithstanding anything to the contrary in this Final Order, if prior to the Challenge Period Termination Date, the Debtors' Chapter 11 Cases are converted to cases under Chapter 7 of the Bankruptcy Code or if a Chapter 11 trustee is appointed in the Debtors' Chapter 11 Cases, the Challenge Period Termination Date shall be extended for an additional seventy-five (75) days from the date of the conversion of the Debtors' Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code or the date of the appointment of the Chapter 11 trustee, as applicable.

(b)     Defense Costs Included in Prepetition Obligations.  To the extent any such objection or complaint of the Statutory Committee or other party in interest is timely filed in accordance with clause (a) immediately above, to the extent the Lender prevails in connection with such objection or complaint, the Lender shall be entitled to include such costs and expenses, including, but not limited to, reasonably attorneys' fees, incurred in defending the objection or complaint as part of the Prepetition Obligations to the extent allowable under Section 506(b) of the Bankruptcy Code.

7.     **<u>Carve Out Provisions</u>**.

(a)    **Carve Out.**  All liens and claims granted by this Final Order shall be subject to the Carve-Out.  As used in this Final Order and the DIP Financing Documents, the "Carve-Out" shall mean:

> (i) quarterly fees required to be paid to the United States Trustee pursuant to 28 U.S.C. §1930(a)(6); any fees payable to the clerk of the Bankruptcy Court, and fees payable to a chapter 7 trustee in an aggregate amount not to exceed $25,000;
>
> (ii) all Allowed Fees (as defined below) of Case Professionals (as defined below) incurred in the period prior to the occurrence of a Triggering Event (such period, the "Pipeline Period"), (less, as of any date of determination, all post-petition amounts actually paid to such Case Professionals in respect of fees and expenses incurred during the Pipeline Period); and
>
> (iii) upon the occurrence of a Triggering Event, an aggregate amount for Allowed Fees of all Case Professionals incurred after the Triggering Event not to exceed $600,000 (which amount shall be reduced for amounts paid in excess of the Budget pursuant to clause (ii) above) (the sum of clauses (ii) and (iii), hereinafter, the "Professionals Carve Out Cap").

For the avoidance of doubt, Allowed Fees that are budgeted to be paid in any week during the Pipeline Period that are unused in such week may be carried forward and used in any subsequent week during the Pipeline Period.  As used herein, the terms: (i) "Allowed Fees" shall mean fees and expense reimbursement of Case Professionals solely to the extent such fees and expenses have been approved by an order of the Bankruptcy Court that has not been vacated or stayed; (ii) "Case Professionals" shall mean attorneys, accountants, financial advisors, consultants and other professionals employed, pursuant to Sections 327, 328 or 1103 of the Bankruptcy Code, to the extent applicable, by the Debtors or the Statutory Committee; and (iii) "Triggering Event" shall mean the earlier of the date: (i) of the Closing of the Sale of the Acquired Assets to Lender, or (ii) that the Lender provides written notice (by email) to

23

Debtors, of the occurrence of a Default or an Event of Default and Lender's termination of the Pipeline Period for purposes of the Carve-Out.  The Carve-Out and any payments made in respect of the Carve-Out shall be in addition to and not reduce the amount of the DIP Loan Obligations or the Prepetition Secured Obligations.

(b)    **No Direct Payment Obligation; No Waiver of Right to Object to Fees.**  Without limiting (and solely to the extent of) their obligations to fund the Carve Out, the Lender shall not be responsible for the direct payment or reimbursement of any fees or disbursements of Case Professionals incurred in connection with the Chapter 11 Cases, or otherwise.  Nothing in this Final Order or otherwise shall be construed:  (i) to obligate the Lender in any way to pay compensation to or to reimburse expenses of any Case Professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement; (ii) to increase the Carve-Out if Allowed Fees are higher in fact than the estimated fees and disbursements of Case Professionals set forth in the Budget; (iii) as consent to the allowance of any fees and expenses of Case Professionals; or (iv) to affect the rights of the Lender or any other party-in-interest to object to the allowance and payment of such fees and expenses.

8.    **Limitations on Use of DIP Facility, DIP Collateral, and Carve Out**.

Until the DIP Facility is satisfied in full, the DIP Facility, DIP Collateral, and Carve Out may not be used:  (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) adverse to the interests of the Lender or its respective rights and remedies under the DIP Financing Documents or this Final Order, as applicable, including, without limitation, for the payment of any services rendered by professionals retained by the Debtors or the Statutory Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion,

objection, defense or other contested matter, the purpose of which is to seek, or the result of

which would be to obtain, any order, judgment determination, declaration or similar relief;

(ii) for invalidating, setting aside, avoiding, or subordinating, in whole or in part, the DIP Loan

Obligations; (iii) for monetary, injunctive, or other affirmative relief against the Lender or its

collateral; or (iv) for preventing, hindering, or otherwise delaying the exercise by the Lender of

any rights and/or remedies under this Final Order, the DIP Financing Documents, or applicable

law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the

Court, or otherwise) by the Lender upon any of the DIP Collateral; (b) to make any distribution

under a plan of reorganization in any of the Chapter 11 Cases; (c) to make any payment in excess

of $10,000 in settlement of any claim, action, or proceeding, before any court, arbitrator, or other

governmental body without the prior written consent of the Lender; (d) to pay any fees or similar

amounts to any person who has proposed or may propose to purchase interests in any of the

Debtors without the prior written consent of the Lender; (e) to object to, contest, or interfere with

in any way the Lender's enforcement or realization upon any of the DIP Collateral once an Event

of Default has occurred, except as to any challenge as to the occurrence or continuation of such

Event of Default; (f) to sell or otherwise dispose of DIP Collateral with a value in excess of

$50,000 in the aggregate without the consent of the Lender; (g) to use or seek to use any

insurance proceeds constituting DIP Collateral without the consent of the Lender; (h) to incur

indebtedness outside the ordinary course of business without the prior consent of the Lender; (i)

to object to or challenge in any way the claims, liens, or interests (including interests in the

Prepetition Collateral or DIP Collateral) held by or on behalf of the Lender; (j) to assert,

commence, or prosecute any claims or causes of action whatsoever, including, without

limitation, any actions under Chapter 5 of the Bankruptcy Code, against the Lender; (k) to

prosecute an objection to, contest in any manner, or raise any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Loan Obligations, DIP Liens, or any other rights or interests of the Lender; or (l) to prevent, hinder or otherwise delay the exercise by the Lender of any rights and remedies granted under this Final Order; provided, however, that notwithstanding anything else herein to the contrary, the Statutory Committee and its professionals may use $15,000 of the proceeds of the DIP Facility or Carve Out to investigate the liens and claims of the Lender.

9.       **Additional Covenants and DIP Protections**:  Without in any manner limiting the terms of the DIP Financing Documents or this Final Order:

(a)    upon reasonable notice,  the Debtors shall provide the Lender and its respective representatives with access to the Debtors' premises, personnel (including, but not limited to, senior management and any chief restructuring officer or similar person or firm employed by the Debtors in these Chapter 11 Cases, advisors, books and records (including reports and analyses prepared by any person or firm employed by the Debtors in these Chapter 11 Cases), and the DIP Collateral, and the Debtors shall cooperate fully in all requests for information and data made by the Lender;

(b)    the Debtors shall promptly (and in any event within one (1) business day after their receipt thereof) provide to the Lender copies of any correspondence, demands, notices, complaints, or process sent to the Debtors by Medicare or other Federal or State governmental agencies;

(c)    the Debtors shall not propose, file, support, or pursue confirmation of a Chapter 11 plan unless such plan provides for the payment in full in cash of all obligations owed to the Lender; and

(d)    The Debtors shall comply with the Reorganization Milestones set forth in Exhibit B attached hereto and also attached to the DIP Credit Agreement as Schedule 4.10 (the "Reorganization Milestones").

10.    **Section 506(c) Claims**.  Except with respect to the Carve-Out, no costs or expenses of administration which may have been or may be incurred in the Chapter 11 Cases  at any time shall be charged against the DIP Collateral and upon the Prepetition Collateral pursuant to Sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the Lender, and no such consent shall be implied from any other action, inaction or acquiescence by any such agents or lenders.  Nothing herein shall constitute a waiver of the Debtors' rights and claims under Section 506(c) as against any other persons or entities except as set forth in the preceding sentence.

11.    **Collateral Rights**.  Unless the Lender has provided its prior written consent or all DIP Loan Obligations have been paid in full in cash (or will be paid in full in cash upon entry of an order approving indebtedness described in subparagraph (a) below), and all commitments to lend have terminated, there shall not be entered in these proceedings, any order which authorizes any of the following:

(a)    the obtaining of credit or the incurring of indebtedness, pursuant to Sections 364(c) or 364(d) of the Bankruptcy Code, that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the DIP Collateral, the Prepetition

Collateral, or the collateral subject to the Adequate Protection Lien, and/or entitled to priority administrative status which is equal or senior to those granted to the Lender; or

(b)    absent approval of this Court on notice to the Lender, relief from stay by any person holding or asserting liens junior to the liens of the Lender on all or any portion of the DIP Collateral; or

(c)    the Debtors' return of goods constituting DIP Collateral pursuant to Section 546(h) of the Bankruptcy Code, except as may be permitted in the DIP Credit Agreement.

12.    **Payment from Proceeds of Collateral**.  Cash may be used pursuant to the Budget for (a) working capital and other general corporate purposes to the extent set forth in the Budget and approved by the Lender and (b) payments of costs of administration of the Chapter 11 Cases, including professionals' fees, to the extent set forth in the Budget;

13.    **Disposition of Collateral**.  The Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral, without the prior written consent of the Lender (and no such consent shall be implied, from any other action, inaction or acquiescence by the Lender or an order of this Court), except: (i) for sales of the Debtors' inventory in the ordinary course of business and otherwise in compliance with the DIP Credit Agreement, (ii) as otherwise provided for in the DIP Credit Agreement and this Final Order, (iii) for a transaction approved by order of the Bankruptcy Court pursuant to the Asset Sale Procedures, as defined herein, or (iv) as otherwise approved by the Bankruptcy Court and consented to by the Lender.

14.    **Events of Default**.  The following shall constitute an event of default under this Final Order, unless expressly waived in writing by the Lender (collectively, the "Events of Default"):

(a)    The occurrence of an "Event of Default" under the DIP Financing Agreements;  or

(b)    the failure by the Debtors to observe or perform any of the terms, provisions, conditions, covenants or obligations under this Final Order (including, without limitation, under paragraph 8 hereof) or the DIP Facility, and which have not been cured within five (5) days.

15.    Rights and Remedies Upon Event of Default.

(a)    Immediately upon the occurrence and during the continuation of an Event of Default, the Lender may declare (i) all DIP Loan Obligations owing under the DIP Financing Documents to be immediately due and payable, (ii) the termination, reduction or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains in effect, and/or (iii) the termination of the DIP Credit Agreement and any other DIP Financing Documents as to any future liability or obligation of the Lender, but without affecting any of the DIP Liens or the DIP Loan Obligations (any such declaration by the Lender shall be referred to herein as a "Termination Declaration").  The Termination Declaration shall be given by email (or other electronic means) to counsel to the Debtors, counsel to the Lender, counsel to the Statutory Committee, and the United States Trustee (the date any such Termination Declaration is made shall be referred to herein as the "Termination Declaration Date").

(b)    The DIP Loan Obligations shall be due and payable, without notice or demand,

29

Any automatic stay otherwise applicable to the Lender is hereby modified so that seven (7) days after the Termination Declaration Date (the "Remedies Notice Period"), the Lender shall be entitled to exercise all rights and remedies against the DIP Collateral in accordance with the DIP Financing Documents and this Final Order and shall be permitted to satisfy the DIP Loan Obligations and DIP Super-Priority Claims, subject to the Carve Out. Notwithstanding anything to the contrary, during the first three (3) days of the Remedies Notice Period, the Debtors or the Statutory Committee shall be entitled to continue to use cash on hand, including any Cash Collateral, in accordance with the Budget. During the Remedies Notice Period, the Debtors or the Statutory Committee shall be entitled to seek an emergency hearing with the Court for the sole purpose of contesting whether an Event of Default has occurred and/or is continuing, and seeking other relief in the event it is determined that an Event of Default has not occurred and/or is continuing. Unless the Court determines during the Remedies Notice Period that an Event of Default has not occurred and/or is not continuing, the automatic stay shall automatically be terminated at the end of the Remedies Notice Period without further notice or order, and the Lender shall be permitted to exercise all remedies set forth herein, in the DIP Agreement and the DIP Financing Documents, as applicable, and as otherwise available at law against the DIP Collateral and/or Prepetition Collateral, without further order of or application or motion to the Court, and without restriction or restraint by any stay under Sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interests in the DIP Collateral or any other rights and remedies granted to the Lender with respect thereto pursuant to the DIP Agreement, DIP Financing Documents, or this Final Order subject to the Carve-Out. The Lender's failure to exercise any or all of its rights under this paragraph shall not constitute a waiver of any of its rights under DIP Agreement, DIP Financing Documents, or this

Final Order.

16.    **Proofs of Claim**.  The Lender will not be required to file proofs of claim in the Chapter 11 Cases.  The Lender is hereby authorized and entitled, in their sole discretion, but not required, to file (and amend and/or supplement, as they see fit) proofs of claim in the Chapter 11 Cases.  Any proof of claim so filed shall be deemed to be in addition and not in lieu of any other proof of claim that may be filed by any of the Lender.

17.    **Other Rights and Obligations**.

(a)    **Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of Final Order**.  Based on the findings set forth in this Final Order and in accordance with Bankruptcy Code Section 364(e), with respect to amounts advanced pursuant to this Final Order, in the event any or all of the provisions of this Final Order are hereafter reversed or modified by a subsequent order of this or any other Court, the Lender is entitled to the protections provided in Section 364(e) of the Bankruptcy Code and, provided that the Final Order is not stayed pending appeal, no such reversal or modification shall affect the validity and enforceability of any advances made under the DIP Facility or the liens or priority authorized or created hereby.  Notwithstanding any such reversal or modification, any claim granted to the Lender hereunder arising prior to the effective date of such reversal or modification of any DIP Protections granted to the Lender shall be governed in all respects by the original provisions of this Final Order, and the Lender shall be entitled to all of the rights, remedies, privileges and benefits, including the DIP Protections granted herein, with respect to any such claim, provided that the Final Order was not stayed at the time the claim arose.  Since the loans made pursuant to the DIP Credit Agreement are made in reliance on this Final Order, the obligations owed the

31

Lender prior to the effective date of any reversal or modification of this Final Order cannot, as a result of any subsequent order in the Chapter 11 Cases, be subordinated, lose their lien priority or super-priority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to the Lender under this Final Order and/or the DIP Financing Documents, provided that the Final Order was not stayed.

(b)    **Discharge Waiver.**  The Debtors expressly stipulate, and the Court finds and adjudicates that, the DIP Loan Obligations shall not be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of Section 1141(d) of the Bankruptcy Code, unless the DIP Loan Obligations have been paid in full in cash on or before the effective date of a confirmed plan of reorganization.

(c)    **Binding Effect**.  All of the provisions of this Final Order shall be binding upon and inure to the benefit of the Lender, the Lender, the Debtors, the Statutory Committee or any other committee, all other creditors of the Debtors, and all other parties in interest, and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors) whether in the Chapter 11 Cases,  or upon dismissal of any such Chapter 11 or Chapter 7 Case.

(d)    **No Waiver**.  The failure of the Lender to seek relief or otherwise exercise its rights and remedies, as applicable, under the DIP Financing Documents, the DIP Facility, this Final Order or otherwise, shall not constitute a waiver of any of such party's rights hereunder, thereunder, or otherwise.  Notwithstanding anything herein, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or

otherwise impair the rights of the Lender under the Bankruptcy Code or under non-bankruptcy law, including without limitation, the rights of the Lender to (i) request conversion of the Chapter 11 Cases to cases under Chapter 7, dismissal of the Chapter 11 Cases, or the appointment of a trustee in the Chapter 11 Cases, (ii) propose, subject to the provisions of Section 1121 of the Bankruptcy Code and this Final Order, a plan of reorganization, or (iii) exercise any of the rights, claims, or privileges (whether legal, equitable or otherwise) the Lender may have pursuant to this Final Order, the DIP Financing Documents, or applicable law.

(e)    **No Third Party Rights**.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, landlord, lessor, equity holder, or any direct, indirect, or incidental beneficiary.

(f)    **No Marshaling**.  The Lender shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or Prepetition Collateral, as applicable.

(g)    **Section 552(b)**.  The Lender shall be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code.  The "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to the Lender with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral or the DIP Collateral.

(h)    **Amendment of DIP Financing Documents**.  The Debtors and the Lender may amend or waive any provision of the DIP Financing Documents on notice to the Office of the United States Trustee and the Statutory Committee, provided that such amendment or waiver, in the reasonable judgment of the Debtors and the Lender, is not material.  Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions of

the DIP Financing Documents shall be effective unless set forth in writing, signed by on behalf of all the Debtors and the Lender.

18.     **Limitation of Liability**.  In determining to provide the DIP Facility or enforcing the rights and remedies afforded to such parties under this Final Order and/or the DIP Financing Documents, the Lender shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§9601 *et seq.* as amended , or any similar federal statute).  Furthermore, nothing in this Final Order or in the DIP Financing Documents shall in any way be construed or interpreted to impose or allow the imposition upon any of the Lender any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.

19.     **Release and Indemnification of the Lender**.  The Debtors shall defend, indemnify, hold harmless and release Lender and the Released Parties (as defined in the DIP Facility) to the extent and as set forth in the DIP Financing Documents, except (i) during the Challenge Period, and (ii) after the Challenge Period only in connection with a pending challenge;  provided, however, the Lender and the Released Parties will be indemnified and held harmless by the Debtors for any cost, expense or liability in full, unless and to the extent it is determined in a final, non-appealable judgment in a court of competent jurisdiction that the Lender is liable for gross negligence or willful misconduct.

20.     **Survival of Final Order**.  All of the provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered

(i) confirming any Chapter 11 plan in the Chapter 11 Cases, (ii) converting any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code (iii) to the extent authorized by applicable law, dismissing any of the Chapter 11 Cases, (iv) withdrawing of the reference of any of the Chapter 11 Cases from this Court, or (v) providing for abstention from handling or retaining of jurisdiction of any of the Chapter 11 Cases in this Court.  The terms and provisions of this Final Order including the DIP Protections granted pursuant to this Final Order and the DIP Financing Documents and any protections granted the Lender shall continue in full force and effect notwithstanding the entry of such order, and such DIP Protections and protections for such other parties shall maintain their priority as provided by this Final Order until all the obligations of the Debtors to the Lender pursuant to the DIP Financing Documents (and this Final Order) have been indefeasibly paid in full and discharged (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms).

(a) **Inconsistency**.  In the event of any inconsistency between the terms and conditions of the DIP Financing Documents and of this Final Order, the provisions of this Final Order shall govern and control.  In that regard, the DIP Credit Agreement is amended and revised as follows:

Section 2.10 (a) is deleted.

Section 6.3 Increases in Interest Rate.  Upon any Event of Default the Interest Rate shall be increased 2 percentage points per annum in excess of the Interest Rate, computed from the date of the Event of Default ("Default Interest Rate"). Such increase in interest amounts shall be subject to the provisions of Section 2.11.

(b)  **Enforceability**.  This Final Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry of this Final Order. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.  The rights of all parties in interest to object to the terms of the Final Order, the DIP Credit Agreement, and any other DIP Financing Agreement at the Final Hearing are expressly reserved.

(c)  **Objections Overruled**.  All objections to the DIP Motion to the extent not withdrawn or resolved are hereby overruled.

(d)  **No Waivers or Modification of Final Order**.  The Debtors irrevocably waive any right to seek any modification or extension of this Final Order without the prior written consent of the Lender and no such consent shall be implied by any other action, inaction or acquiescence of the Lender.

21.  **Headings.**  All paragraph headings used in this Final Order are for ease of reference only and are not to affect the construction hereof or to be taken into consideration in the interpretation hereof.

22.    **<u>Retention of Jurisdiction</u>**.  The Bankruptcy Court has and will retain jurisdiction to enforce this Final Order.



**Dated: March 12, 2014**
    **Central Islip, New York**

_____
        **Alan S. Trust**
**United States Bankruptcy Judge**

**EXHIBIT A**

**DIP BUDGET**

## EXHIBIT "B"

## REORGANIZATION MILESTONES

(a)     On or before March 3, 2014, the Borrowers shall have filed a motion pursuant to Section 363 of the Bankruptcy Code seeking authorization from the Bankruptcy Court to conduct a Sale of all or substantially all of Borrowers' assets, which motion shall be in form and substance satisfactory to the Lender, and which motion shall include Lender as "stalking horse" in form and substance acceptable to the Lender;

(b)     On or before March 11, 2014, the Bankruptcy Court shall have entered an order, in form and substance acceptable to the Lender, approving bid and sale procedures including breakup fee and expense reimbursement provisions in favor of Lender ("**Approved Sale Procedures**") for the conduct of a sale of all or substantially all of Borrowers' assets.

(c)     On or before April 29, 2014 Borrowers shall conduct an auction in accordance with the Approved Sale Procedures for a sale of all or substantially all of Borrowers' assets and accept, in the Borrowers' business judgment, the highest and best bid (the "**Successful Bid**"), provided that such date may be extended as set forth in the Approved Sale Procedures.

(d)     On or before May 2, 2014, the Bankruptcy Court shall have entered the Asset Sale Order approving the sale to Lender of all pursuant to the Asset Purchase Agreement and authorizing the Borrowers to close the sale transaction, provided that such date may be extended until May 21, 2014 as set forth in the Approved Sale Procedures.

(e)     On or before June 30, 2014, the Borrowers shall have closed the sale transaction.