Richard J. McCord (RJM 3290)
Carol A. Glick (CAG 2675
CERTILMAN BALIN ADLER & HYMAN, LLP
Proposed Attorneys for the Chapter 7 Trustee
90 Merrick Avenue
East Meadow, New York 11554
(516) 296-7000

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

In re:                                              Chapter 7

USA UNITED FLEET INC., a/k/a                        Case No. 11-45867-jf
SHORELINE FLEET, INC.,

                  Debtor.

--------------------------------------------------------------X

In re:                                              Chapter 7

USA UNITED HOLDINGS INC., a/k/a                     Case No. 11-45868-jf
SHORELINE MERGE, INC.,

                  Debtor.

--------------------------------------------------------------X

In re:                                              Chapter 7

UNITED FLEET INC.,                                  Case No. 11-45869-jf

                  Debtor.

--------------------------------------------------------------X

In re:                                              Chapter 7

UNITED TOM TOM TRANSPORATION                        Case No. 11-45872-jf
INC., a/k/a SHORELINE BUSES, INC.,

                  Debtor.

--------------------------------------------------------------X

2385413-5

```
----------------------------------------------------------X
In re:                                          Chapter 7

USA UNITED BUS EXPRESS INC., a/k/a               Case No. 11-45873-jf
SHORELINE BUS EXPRESS, INC..

                    Debtor.

----------------------------------------------------------X

In re:                                          Chapter 7

USA  UNITED TRANSIT INC., a/k/a                 Case No. 11-45875-jf
SHORELINE PUPIL TRANSIT, INC.,

                    Debtor.

----------------------------------------------------------X
In re:                                          Chapter 7

TOM TOM ESCORTS ONLY, INC.,                      Case No. 11-45876-jf

                    Debtor.

----------------------------------------------------------X
In re:                                          Chapter 7

SHORELINE TRANSIT INC.,                          Case No. 11-45877-jf

                    Debtor.

----------------------------------------------------------X
In re:                                          Chapter 7

NORTHEAST TRANSIT, INC.,                         Case No. 11-    -jf

                    Debtor.

----------------------------------------------------------X
In re:                                          Chapter 7

NORTHEAST BUSES, INC.,                           Case No. 11-    -jf

                    Debtor.

----------------------------------------------------------X
```

2

2385413-5

```
------------------------------------------------------X
```

In re:                                          Chapter 7

NORTHERN TRANSIT, INC.                          Case No. 11-    -jf

                        Debtor.

```
------------------------------------------------------X
```

### MOTION BY RICHARD J. MCCORD, ESQ., TRUSTEE OF THE CHAPTER 7 ESTATES OF THE UNITED DEBTORS AND NORTHEAST DEBTORS, FOR AN ORDER (i) APPROVING SALE PROCEDURES; (ii) APPROVING THE ASSET PURCHASE AGREEMENT BETWEEN THE TRUSTEE AND MV TRANSIT, INC. REGARDING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORYCONTRACTS, SUBJECT TO HIGHER AND BETTER OFFERS, PURSUANT TO 11 U.S.C. §§ 105, 363 AND 365 AND FED. R. BANKR. P. 6004 AND 6006; AND (iii) FOR RELATED RELIEF

**TO: HONORABLE JEROME FELLER**
**UNITED STATES BANKRUPTCY JUDGE**

Richard J. McCord, Esq., the Chapter 7 Trustee for USA United Fleet Inc., a/k/a Shoreline Fleet, Inc.; USA United Holdings Inc., a/k/a Shoreline Merge, Inc.; United Fleet, Inc.; United Tom Tom Transportation Inc., a/k/a Shoreline Buses, Inc..; USA United Bus Express Inc., a/k/a Shoreline Bus Express, Inc.; USA United Transit Inc., a/k/a USA United Pupil Transit, Inc.; Tom Tom Escorts Only, Inc.; and Shoreline Transit Inc. (collectively, the "United Debtors"), and Northeast Transit, Inc., Northeast Buses, Inc., and Northern Transit, Inc. (collectively, the "Northeast Debtors") submits this motion (the "Motion") for an Order (i) approving Sale Procedures; (ii) approving the Asset Purchase Agreement by and among Richard J. McCord, as Trustee for the United Debtors and as Trustee for the Northeast Debtors (the "Trustee" or the "Seller"), and MV Transit, Inc. ("MV Transit") or its designee ("MV Transit or such designee, the "Buyer"), free and clear of liens, claims, encumbrances and interests (except as specifically provided in the Agreement), and the assumption and assignment of certain

3

executory contracts of the United Debtors and the Northeast Debtors (the United Debtors and the Northeast Debtors, collectively, the "Debtors"), subject to higher and better offers, pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and (iii) for such other, further and related relief as the Court deems just and proper, and respectfully represents as follows:

## BACKGROUND

1.    On July 6, 2011 (the "United Petition Date"), each of the United Debtors commenced a voluntary case under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2.    On July 29, 2011, the Court converted each of the United Debtors' Chapter 11 cases to cases under Chapter 7 of the Bankruptcy Code.

3.    By Order dated July 29, 2011, Richard J. McCord, Esq. (the "Trustee") was appointed the Chapter 7 Trustee of each of the converted cases of the United Debtors.

4.    On August 10, 2011 ("Northeast Petition Date"), the Northeast Debtors filed voluntary Chapter 7 cases and Richard J. McCord, Esq. was appointed as the Trustee in the Northern Debtors' cases, as well.

5.    As more fully described below, prior to the United Petition Date, the United Debtors assigned certain contracts to the Northeast Debtors, which are included in the assets to be purchased by the Buyer under the Asset Purchase Agreement ("APA").

## THE BUSINESS OF THE UNITED DEBTORS

6.    The United Debtors all filed skeletal petitions on the United Petition Date. Schedules and various other required documents were not filed until August 3, 2011.

7.    On the United Petition Date, the United Debtors filed in each the cases, a

4

Declaration of William Moran, Comptroller of the Debtors, in Compliance With Rule 1007-4 of the Local Bankruptcy Rules dated July 5, 2011 (the "Moran Declaration").

8.     The Moran Declaration identified the United Debtors' assets to include: (a) bank accounts with a *de minimus* balance; (b) accounts receivable valued at approximately $5,465,000.00; (c) various machinery and equipment with an approximate value of $450,000.00; (d) various buses and other vehicles with an approximate value of $10,000,000.00 and six contracts with the New York City Department of Education (the "DOE") with a value of $2,715,000.00 ("DOE Contracts"). See Case No. 11-45867-jf, ECF No. 2, ¶¶ 10 and 20.

9.     The Moran Declaration disclosed three secured creditors: (a) Comerica Bank ("Comerica"), with a secured claim of $10,926,375.12; (b) All Points Capital Corp., with no amount disclosed; and (c) the United States Internal Revenue Service, with no amount disclosed. Id., ¶ 9.

10.     The Moran Declaration cited the following reasons for the filing of the United Chapter 7 cases: (a) the embezzlement of funds by a payroll company; (b) the demand of the Amalgamated Transit Union Local 1181-1061, AFL-CIO (the "Union") for a $1.2 million security deposit; and (c) Comerica's notice of assignment of accounts receivable to the DOE, directing that the DOE make $5 million in payments, allegedly due to the United Debtors under the Contracts, directly to Comerica. Id., ¶ 48. The Moran Declaration also disclosed that, on June 30, 2011, Comerica commenced an action in the United States District Court for the Eastern District of New York seeking monies allegedly due and the appointment of a receiver to take control of the United Debtors' assets. Id., ¶ 14.

11.     According to the Moran Declaration, the DOE Contracts "accounted for 100% of the Debtors' revenues from all of its transportation operations in fiscal year 2010." Id., ¶ 20.

2385413-5

12.    After the filing of the United Chapter 11 cases, the Court determined that prior to the United Petition Date the DOE Contracts had been assigned to non-debtor entities Northeast Transit, Inc., Northeast Buses Inc. and Northern Transit Inc., which are owned and controlled by Moran.

## JURISDICTION

13.    This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

14.    The Trustee requests (i) entry of an order, substantially in the form of **Exhibit A** annexed hereto, approving the Sale Procedures; and (ii) entry of an order, substantially in the form of **Exhibit B** annexed hereto (subject to modification), approving the APA, subject to higher and better offers.

## THE ASSET PURCHASE AGREMENT

15.    The APA, a copy of which is annexed hereto as **Exhibit 1**,[1] contemplates, among other things: (a) the sale of substantially all of the assets of the United Debtors and the Northeast Debtors, including, but not limited to (i) all buses and other vehicles (collectively, the "Buses") owned by the Debtors, along with all documents relating to the Buses, including but not limited to title documents and maintenance records; (ii) all current contracts with the DOE pursuant to which Debtors are currently providing services to the DOE, which the Trustee will assume and

---

[1] This Motion contains an abbreviated description of the terms and conditions of the APA; however, for a full understanding of the transaction, your attention is directed to the copy of the APA annexed hereto as Exhibit 1. The capitalized terms in this Motion correspond to the defined terms in the APA. To the extent the description of the APA herein differs from the APA annexed hereto, the APA shall control, as the APA continued to go through revisions while this motion was being drafted.

2385413-5

assign to the Buyer, with the DOE's consent and agreement; (iii) all current licenses and permits of the Debtors relating to the Buses or the DOE Contracts; and (iv) all of the Debtors' books and records, and other related assets, for a Purchase Price of (a) $9.0 million in cash, less an adjustment of $13,937 for each Bus that cannot be delivered to Buyer at Closing (it being understood that the total number of Buses to be delivered at Closing should be 547) (the "Cash Purchase Price"); and (b) Buyer's assumption at the Closing of the Assumed Liabilities (as defined in Section 1.1 of the APA).[2] In addition, Buyer agrees to leave in the United Debtors' Chapter 7 estates the Excluded Assets (as defined in Section 1.1 of the APA).[3]

16.   Provided that the conditions to Closing set forth in the APA (as more fully described below) have been satisfied or, if waiveable, have been waived, the Closing of the transactions contemplated by the APA shall be held at 10:00 a.m., Eastern Time, at the offices of Wilmer Cutler Pickering Hale and Dorr LLP, 399 Park Street, New York, New York, within three (3) Business Days following the first date that all such conditions have been satisfied or, if waiveable, waived, on a Business Day mutually agreeable to the Buyer and the Seller, but in no event later than August 18, 2011.

17.   Upon Closing, the Buyer shall deposit in an escrow account held in trust by a third-party escrow agent, $1.2 million of the Cash Purchase Price (the "Escrow"). Within 90

---

[2] "Assumed Liabilities" is defined as "(1) the tax lien liabilities of the Sellers to the Internal Revenue Service ("IRS") relating to the tax liens . . . in an amount not to exceed $1,000,000. If the total tax liens exceed $1,000,000, the assumed amount will be applied first to unpaid taxes, then interest, and then penalties; and (2) the Allowed Union and Funds Claims, but only to the extent that the Allowed Union and Funds Claims Exceed the Allowed DOE Receivable. For the avoidance of doubt, any obligations of the Sellers to the IRS in excess of $1,000,000, any obligation of the United Debtors to any other taxing authorities or governmental entities, or any other liabilities of either the United Debtors or the Northeast Debtors, shall not be included in the Assumed Liabilities except as otherwise specifically identified as constituting an Assumed Liability under this Agreement." APA, at 2-3. See also Exhibit A to the APA. The "Allowed DOE Receivable" is defined as "any and all amounts owed by the DOE to Sellers in an amount finally determined and set forth in a Final Order entered by the Bankruptcy Court." APA, at 2.

[3] "Excluded Assets" is defined as "all assets other than the Acquired Assets . . . specifically includ[ing] all of the United Debtors' accounts receivable at Closing, including the Allowed DOE Receivable." APA, at 3.

days of the Closing Date, Buyer shall deliver to the Trustee and to the escrow agent an accounting of reasonable and necessary costs and expenses incurred by Buyer to restore the buses to acceptable industry standard working order. Within five business days after the receipt of such accounting, the escrow agent shall deliver to the Buyer the amount of the costs and expenses shown in the accounting; and shall deliver to the Trustee any amount remaining in the Escrow Account after payment to the Buyer. The Buyer and the Trustee shall cooperate to provide the third-party escrow agent with instructions to implement the provisions of the APA.

18.     The Cash Purchase Price shall be paid to the Trustee for the benefit of the United Debtors' Chapter 7 estates, and no portion of the Cash Purchase Price shall be allocated to the Northeast Debtors. As the sole consideration for the assignment of the DOE contracts to the Buyer, the United Debtors shall forgive the Northeast Promissory Note (as defined in section 1.1 of the APA).

19.     To the extent the Allowed DOE Receivable exceeds the amount of the Allowed Union and Funds Claims (as defined in Section 1.1 of the APA), the remainder of the Allowed DOE Receivable will go first to pay the claims of any secured creditor holding a valid and properly perfected security interest in the Allowed DOE Receivable, and then, if anything remains, will be paid in accordance with the priorities set forth in Chapter 7 of the Bankruptcy Code. .

20.     Within 90 days of after the Closing, the Buyer shall deliver to the Trustee an allocation of the Purchase Price among the Acquired Assets (the "Allocation"), provided that no portion of the Purchase Price shall be allocated to the DOE Contracts. Such Allocation shall become part of the APA for all purposes but shall not be binding on the Seller for purposes of the Chapter 7 distribution process. The Seller and the Buyer agree to report, pursuant to Section

2385413-5

1060 of the Internal Revenue Code and the regulations promulgated thereunder, if and when required, the Allocation of the Purchase Price, as adjusted, in a manner entirely consistent with such Allocation in the preparation and filing of all Tax Returns (including IRS Form 8594).

21.     In addition, the Trustee shall take all actions necessary to assume and assign to Buyer the following executory contracts and unexpired leases of the Debtors (the "Assumed Executory Contracts"): (i) the Collective Bargaining Agreements ("CBA") with the Union; and (ii) the DOE Contracts.

22.     <u>Conditions to Seller's Obligations</u>.

(a)     The Sale Approval Order shall have been entered by the Bankruptcy Court no later than August 15, 2011, and shall not have been stayed, withdrawn or modified, unless such modification is acceptable to Buyer, in its sole discretion.

(b)     There shall be no judgment, decree, injunction, order or ruling in effect preventing the consummation of the transactions contemplated by the APA, or any pending legal proceeding seeking any such judgment, decree, injunction, order or ruling.

(c)     The Buyer shall have performed in all material respects all agreements and covenants required by the APA to be performed by the Buyer prior to or at the Closing Date, and the representations and warranties of the Buyer shall be correct and complete in all material respects as of the Closing Date.

(d)     On or prior to the Closing Date, the Buyer shall have delivered to the Trustee the Cash Purchase Price.

23.     <u>Conditions to Buyer's Obligations</u>.

(a)     The Sale Approval Order shall have been entered by the Bankruptcy Court no later than August 15, 2011, and shall not have been stayed, withdrawn or modified.

9

(b)     All of the Buses are ready to be delivered to Buyer on the day of the Closing, meaning, inter alia, that the location of each Bus is identified, each Bus is accessible to the Buyer, and that Buyer is able to take possession of each Bus without any interference or claims by third parties.

(c)     The Union and Funds Claims shall each have provided by August 15, 2011 its agreement in writing that it has accurately represented its claims in connection with the negotiation of this Agreement and that it is not aware of any claims that it has not disclosed to the Buyer.

(d)     There shall not be any judgment, decree, injunction, order or ruling in effect preventing the consummation of the transactions contemplated by the APA, or any pending legal proceeding seeking any such judgment, decree, injunction, order or ruling.

(e)     The Seller shall have performed in all material respects all agreements and covenants required by the APA to be performed by the Seller prior to or at the Closing Date, and the representations and warranties of the Seller shall be correct and complete in all material respects as of the Closing Date.

(f)     Except as provided in Article 4.4 of the APA, all customary regulatory approvals that may be required, if any, shall have been obtained, or any applicable waiting periods shall have expired without comment or response from the applicable regulatory entity or agency. Procurement of the executed approvals of the assignments of the DOE Contracts by DOE and other municipal bodies who are required to approve the assignments and the completion of all DOE procurement and other legal requirements applicable to said assignments by the Closing Date is and shall not be a condition to the Buyer's obligation to proceed to Closing on the Closing Date.

2385413-5

(g)     There shall not have been any material adverse change to the Acquired Assets, or to the value thereof, or to the finances or operations of the Debtors, other than the Northeast Debtors' filing of the bankruptcy cases, that (i) becomes known to the Buyer from the date of the APA through the Closing Date, (ii) was not disclosed by the Seller, and (iii) was not reasonably discoverable by the Buyer prior to the date of the APA.

(h)     The Seller shall have delivered to Buyer representation letters from Comerica, the Union, the Funds, William Moran, and the DOE (collectively, the "Consenting Parties") pursuant to which (i) each Consenting Party consents to the transaction as described in the APA; (ii) William Moran has agreed to enter into a severance agreement pursuant to which Buyer will pay Moran $150,000.00, to be made in three monthly payments; and Moran acknowledges that afer the Closing he will not be an employee of or consultant to the Buyer; (iii) subject to compliance with all applicable procurement and other legal requirements as stated in Article 4.4 of the APA, the DOE consents to the assignment to MV Transit of the DOE Contracts and agrees no cure amount is owed with respect to the DOE Contracts; (iv) Comerica agrees that it shall consent to the use of its cash collateral arising from the Allowed DOE Receivable to the extent required to pay in full the Allowed Union and Funds Cure Claims, with Comerica to otherwise retain all its rights and interest in the DOE Receivable and Comerica to receive a replacement lien in the accounts receivable of the United Debtors (including the Allowed DOE Receivable except as payable on account of the Allowed Union and Funds Cure Claims) to the extent of any diminution thereof (including through use of Comerica's cash to pay the Allowed Union and Funds Cure Claims) since the Petition Date, as adequate protection for such use of its cash collateral.

(i)     Except as provided in the APA, the Union and the Funds each acknowledge the

11

interest of Seller, Buyer and Comerica in the determination of the Allowed DOE Receivable and the Allowed Union and Funds Claims, and agree that they will not object to the Bankruptcy Court's jurisdiction to determine the value of the DOE Receivable or the value of the Union and Funds Claims or to the standing of Seller, Buyer or Comerica to participate in any proceeding in which the value of the DOE Receivable or the value of the Union and Funds Claims are at issue.

(j)     The Seller shall have executed and delivered to the Buyer all of the documents provided for in section 3.2 of the APA.

(k)     The Closing shall have occurred on or before August 18, 2011.

(l)     On or before the Closing Date, the Seller shall have delivered to the Buyer all of the following: (i) a certified copy of the Sale Approval Order entered by the Bankruptcy Court; (ii) a certificate from the Seller, dated as of the Closing Date, stating that the conditions specified in sections 8.1 through 8.10 of the APA have been satisfied; and (iii) such other documents or instruments as the Buyer or its counsel may reasonably request to effect the transactions contemplated by the APA.

## THE COURT SHOULD APPROVE THE ASSET PURCHASE AGREEMENT

24.     Section 363(b)(1) of the Bankruptcy Code provides that the trustee, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).   To sell property under section 363(b), the trustee must demonstrate to the court a legitimate business justification for the proposed action.   See Committee of Equity *See Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983).   When a valid business justification exists, the law vests the trustee's decision with a strong presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best

2385413-5

interests of the company. *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992), appeal dismissed, 3 F.3d 49 (2d Cir. 1993).

25.     In addition, Section 363(f) of the Bankruptcy Code provides that the trustee may sell property under subsection (b) only if (i) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (ii) such entity consents; (iii) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (iv) such interest is in bond fide dispute; or (v) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

26.     Section 365(a) provides that the trustee, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor. 11 U.S.C. §§ 365(a). Similar to Section 363(b)(1), the standard to be applied by a court in determining whether an executory contract or unexpired lease should be assumed or rejected is the "business judgment" test, which is premised on the trustee's business judgment that assumption would be beneficial to the estate. *See Orion Pictures Corp., v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098-99 (2d Cir. 1993); *see also In re Child World, Inc.* 142 B.R. 87, 89 (Bankr. S.D.N.Y. 1992) (debtor may assume or reject an unexpired lease under § 365(a) in the exercise of its "business judgment").

27.     Section 365(b) of the Bankruptcy Code requires that a trustee satisfy certain additional requirements to assume an executory contract or unexpired lease, as follows:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

13

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default . . . ;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b). This section does not apply to a default that is a breach of a provision relating to:

(A) the insolvency or financial condition of the debtor at any time before the closing of the case;

(B) the commencement of a case under this title;

(C) the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement; or

(D) the satisfaction of any penalty rate or penalty provision relating to a default arising from any failure b the debtor to perform nonmonetary obligations under the executory contract or unexpired lease.

11 U.S.C. § 365(b)(2)

28.    Section 365(b)(1) of the Bankruptcy Code requires that the trustee or the successful winning bidder cure, or provide adequate assurance that they will promptly cure, any outstanding defaults under the assumed contracts or leases in connection with the assumption and assignment of same to the successful bidder.

29.    Consequently, a Chapter 7 trustee may sell all or substantially all of the assets of a debtor and assume and assign the debtor's executory contracts and unexpired leases in order to maximize value for the estate and its creditors, on an expedited basis, provided the court finds a good business reason to grant such relief. *See, e.g., Lionel*, 722 F.2d at 1069.

2385413-5

30.     Prior to the Chapter 11 filings, the United Debtors (other than United Holdings) operated as one of the largest providers of school bus transportation to the DOE through the DOE Contracts. The United Debtors and/or the Northeast Debtors currently have a fleet of more than 400 vehicles operating from three different facilities. The United Debtors employed approximately 1,188 people, including 559 drivers, 563 escorts (for the pre-kindergarten vehicles), 54 shop employees and 12 executive and administrative employees. The drivers and escorts are members of the Union. Certain of the United Debtors are parties to the CBA.

31.     The operations of the Debtors are seasonal in nature. Historically, the first quarter of the Debtors' fiscal year (ending September 30) generated less operating profit due to significantly reduced revenues from the DOE Contracts during the summer months. The Debtors' six (6) DOE Contracts which, taken together, generated 100% of the Debtors revenue in fiscal 2010. The school bus contracts resume in late August and early September in each year.

32.     In the Trustee's business judgment, it is essential to sell these valuable assets while they are of maximum value to the Chapter 7 estates, on an expedited basis, as the DOE Contracts will lose their value within the next few weeks unless a purchaser can come in and immediately utilize the Buses to perform under the DOE Contracts. In addition, the sale of the Debtors' assets under the terms of the APA will save the jobs of hundreds of employees, as the APA provides for the assumption and assignment of the CBA, as well as certain other executory contracts and unexpired leases.

33.     MYC & Associates, Inc. ("MYC"), the Trustee's proposed Auctioneers, and EisnerAmper, LLP, the Trustee's proposed Accountants, have examined the DEA Contracts and conducted an inventory of the other assets to be sold to the Buyer under the APA, and have determined that the offer from MV Transit is commercially reasonable. In addition, MYC has

identified at least three (3) additional potential bidders that they believe will attend the sale.

34.     The Trustee has been advised that should it appear that the Debtors cannot perform under the DOE Contracts, then the DOE will offer the DOE Contracts for bid to other bus companies. Therefore, absent approval of the APA and an expedited closing of the sale, the value of the assets of these Chapter 7 estates will plummet precipitously, to the detriment of the estates and their respective creditors.

35.     On information and belief, all parties with an interest in the assets to be sold and transferred and/or assumed and assigned have consented to the terms of the APA.

36.     In view of the foregoing, the Trustee proposes to consummate the sale as soon as possible subsequent to the entry of an Order by this Court granting the relief requested in this Motion but in no event later than August 18, 2011. Accordingly, the Trustee hereby requests that the implementation of the Order granting this Motion shall not be stayed pursuant to Bankruptcy Rule 6004(h).

## SALE PROCEDURES

37.     The Trustee believes that the Sale Procedures set forth herein will maximize the value of the Debtors' business and assets. The following contains a description of the qualifications for competing bidders and the bidding procedures to be utilized in connection with the sale:

38.     Any competing offer to purchase the Acquired Assets, as set forth in the APA, will not be considered by the Seller as qualified unless: (a) it is in writing and is irrevocable through the closing of the sale of the Acquired Assets; (b) it includes written evidence of affirm, irrevocable commitment for financing, or other evidence of ability to consummate the proposed transaction, that will allow the Seller to make a reasonable determination as to the Bidder's

2385413-5

financial and other capabilities to consummate the proposed transaction; (c) it is not conditioned on any contingencies, such as, without limitation (i) the outcome of unperformed due diligence by the Bidder and/or (ii) obtaining financing; (d) it includes evidence, in form and substance reasonably satisfactory to the Seller, of authorization and approval from the Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery, and closing of the proposed transaction; and (e) in the Seller's reasonable judgment, after consulting with the Seller's financial and legal advisors, such competing offer has been made on the same terms and conditions as those set forth in the APA, and the competing purchase price exceeds the Purchase Price.

39.     Competing bids shall be limited to all cash offers, and the minimum opening competing bid shall be $500,000.00 higher than the Cash Purchase Price set forth in the APA. Additional bids shall be in increments of $250,000.00 each. All prospective competing bidders shall be required to deposit twenty-five (25%) percent of the Cash Purchase Price in escrow with the Trustee ($2,250,000.00), in certified funds, on or before 12:00 noon on the date that is one (1) Business Day prior to the hearing of this Motion in order to bid at the Hearing. The highest bidder at the Hearing shall be the purchaser under the APA ("Successful Bidder"), free and clear of all liens, claims and encumbrances, with any such liens, claims and encumbrances to attach to the proceeds of sale. The deposit shall be non-refundable in the event the Successful Bidder fails to close on or before August 18, 2011 and, in the event the Successful Bidder fails to so close, the entire amount of the deposit shall be forfeited. Time shall be of the essence in the closing of this transaction. In the event the Successful Bidder fails to close as set forth herein, then the Trustee shall retain the right to accept the bid next highest in amount to the bid of the Successful Bidder.

2385413-5

40. Immediately upon the conclusion of the sale, the Successful Bidder will be required to execute an Asset Purchase Agreement with the Trustee containing substantially all of the terms and provisions set forth in the APA with MV Transit.

41. The Trustee is not proposing a break-up fee or overbid protection.

## NOTICE

42. The Trustee proposes to serve a copy of this Motion (including all exhibits thereto) by electronic mail (where available) and first class mail on (a) counsel for the Debtors; (b) the U.S. Trustee; (c) the attorneys for Amalgamated Transit Union Local 1181-1061, AFL-CIO; (d) the attorneys for the Division 1181 A.T.U. - New York Employees Pension Fund and the Division 1181 A.T.U. – New York Welfare Fund; (e) the attorneys for the City of New York; (e) the attorneys for Comerica Bank; (f) the attorneys for Sovereign Bank; (g) all parties claiming a security interest in the assets to be sold; and (h) all parties that have filed a notice of appearance or have requested notice in these cases; and a copy of the Notice of Hearing and Sale Procedures by first class mail on all creditors and parties in interest.

43. The Trustee respectfully submits that such notice is sufficient under Sections 363 and 365 and Bankruptcy Rules 2002, 6004 and 6006.

## OBJECTIONS

44. The Trustee respectfully requests the Court require any party filing an objection to the Motion to file the objection with the Court and serve the objection so as to be received by the Trustee, c/o Certilman Balin Adler & Hyman, LLP, 90 Merrick Avenue, East Meadow, New York 11554, Attn: Richard J. McCord, Esq., counsel for Buyer, Wilmer Cutler Pickering Hale and Dorr LLP, 399 Park Avenue, New York, New York 10022, Attn: Andrew Goldman, Esq., and the Office of the United States Trustee for the Eastern District of New York, 271 Cadman

18

2385413-5

Plaza East, Suite 4529, Brooklyn, New York 11201 (Attn: William E. Curtin, Esq.), no later than August 12, 2011, at 11:00 a.m.

45.     No prior motion for the relief requested herein has been made to this Court or any other Court.

46.     The Trustee respectfully requests that this Court waive the requirements of Local Bankruptcy Rule 9013-1(b) since this Motion does not present any novel issues of law and contains a brief discussion of the relevant case law.

**WHEREFORE**, pursuant to 11 U.S.C. §§ 105, 363, and 365 Bankruptcy Rules 2002(2), 6004(h), 6006 and 9006(c)(1), the Trustee respectfully requests that the Court enter the orders annexed hereto as Exhibits A and B, approving the Sale Procedures and the proposed sale of substantially all of the assets of the Debtors to MV Transit pursuant to the APA, free and clear of all liens, claims, encumbrances, and interests, and to assume and assign certain executory contracts and unexpired leases, as set forth in the APA, subject to higher and better offers, and for such other, further and related relief as may be just, proper and equitable.

Dated: East Meadow, New York
      August 10, 2011

               **CERTILMAN BALIN ADLER & HYMAN, LLP**
               Attorneys for Richard J. McCord, Esq., Chapter 7
               Trustee for the United Debtors and Northeast Debtors

               By:    /s/ Richard J. McCord
                         Richard J. McCord (RJM 3290)
                         Carol A. Glick (CAG 2675)
                         90 Merrick Avenue
                         East Meadow, NY 11554
                         (516) 296-7000

2385413-5