ANDERSON KILL & OLICK, P.C.
*Attorneys for Debtor*
1251 Avenue of the Americas
New York, New York 10022
Telephone: (212) 278-1000
Facsimile: (212) 278-1733
Todd E. Duffy
Dennis J. Nolan

| **UNITED STATES BANKRUPTCY COURT EASTERN DISTRICT OF NEW YORK** | |
|---|---|
| In re:<br><br>USA United Fleet, Inc.,<br>*a/k/a Shoreline Fleet, Inc.*<br><br>　　　　　Debtor. | Chapter 7<br><br>Case No. 11-45867 (JF) |
| In re:<br><br>USA United Holdings, Inc.,<br>*a/k/a Shoreline Merge, Inc.*<br><br>　　　　　Debtor. | Chapter 7<br><br>Case No. 11-45868 (JF) |
| In re:<br><br>United Fleet, Inc.,<br><br>　　　　　Debtor. | Chapter 7<br><br>Case No. 11-45869 (JF) |
| In re:<br><br>United Tom Tom Transportation, Inc.,<br>*a/k/a Shoreline Buses, Inc.*<br><br>　　　　　Debtor. | Chapter 7<br><br>Case No. 11-45872 (JF) |
| In re:<br><br>USA United Bus Express, Inc.,<br>*a/k/a Shoreline Bus Express, Inc.*<br><br>　　　　　Debtor. | Chapter 7<br><br>Case No. 11-45873 (JF) |

| | |
|---|---|
| In re:<br><br>USA United Transit, Inc.,<br>*a/k/a Shoreline Pupil Transit, Inc.*<br><br>        Debtor. | Chapter 7<br><br>Case No. 11-45875 (JF) |
| In re:<br><br>Tom Tom Escorts Only, Inc.,<br><br>        Debtor. | Chapter 7<br><br>Case No. 11-45876 (JF) |
| In re:<br><br>Shoreline Transit, Inc.,<br><br>        Debtor. | Chapter 7<br><br>Case No. 11-45877 (JF) |

**DECLARATION OF TODD E. DUFFY IN SUPPORT OF APPLICATION FOR ANDERSON KILL & OLICK, P.C. TO WITHDRAW AS COUNSEL TO THE DEBTORS**

I, Todd E. Duffy, hereby state and declare as follows:

1. I am an attorney licensed to practice law in the state and federal courts of New York and New Jersey and the Commonwealth of Pennsylvania and the United States Court of Appeals for the Second Circuit and am a shareholder of Anderson Kill and Olick, P.C.

2. I submit this Declaration in support of the Application of Anderson Kill & Olick, P.C. to Withdraw as Counsel to the Debtor.

3. Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein.

4. On July 6, 2011 (the "Petition Date"), the Debtors filed with this Court their respective voluntary petitions for relief under chapter 11 of title 11 of the United States Bankruptcy Code (11 U.S.C. §§ 101-1532).

NYDOCS1-972734.1

2

5. On the Petition Date, the Debtors filed, among other things, a motion to use cash collateral, motion for joint administration, and a motion to pay the Debtors' employees (collectively, the "First Day Motions").

6. On July 7, 2011, the Debtors filed a motion to shorten the time period for the Court to schedule a hearing on the First Day Motions. The Court entered an order scheduling the hearing on the First Day Motions for July 8, 2011.

7. I spent most of the day on July 7, 2011 working with Comerica to obtain a consensual cash collateral order. Upon completion of the negotiations and finalizing the draft consensual order, I received a call from the New York City Corporation Counsel informing me that an assignment of the Debtors' contracts with the New York City Board of Education became final on July 1, 2011.

8. Prior to the hearing on the First Day Motions, I explained the new revelations to counsel for the U.S. Trustee and counsel to Comerica Bank. Upon commencement of the hearing, I immediately disclosed this newly learned information to the Court. Subsequently, because of the uncertain nature of the contents of the Debtors' estates, the Court adjourned the hearing on the First Day Motions.

9. On July 9, 2011, the Debtors met with Comerica to come to some agreement as to how to bring the Debtors' contracts back into the estates. During this weekend, I first learned that on July 4, 2011, all of the shares of the Debtor companies were transferred to William Moran, the Comptroller of the Debtors.

10. The discussions with Comerica resulted in the Debtors' motion to enforce the automatic stay or, in the alternative, merge the non-debtor Northeast Transit companies with the

Debtor companies. The Court entered an order setting the hearing on that motion for July 15, 2011.

11. Prior to the commencement of the hearing on the motion, I disclosed the transfer of shares to Mr. Moran to the Court. Mr. Moran was seated next to me during that hearing. The Court denied that motion on July 15, 2011 and recommended that the U.S. Trustee file a motion to convert the Debtors' cases.

12. On July 20, 2011, the U.S. Trustee filed her motion to convert the Debtors' cases to chapter 7. On that same day, I received a call from counsel to MV Transportation stating that they had an interest in purchasing all of the assets of the Debtors. MV Transportation's counsel told me specifically that if the case converted to a chapter 7, it would walk away from the deal. Believing that this was the best way to get maximize the value of the estate for creditors, I participated in due diligence through the Debtors' financial advisor and negotiated along with Comerica and the other secured creditors and the Union for a term sheet.

13. Upon determining that we were close to finalizing a deal with MV Transportation, on July 28, 2011, I drafted a letter to the Court requesting an adjournment of the U.S. Trustee's motion to convert the Debtors' cases to a chapter 7. The Court denied the Debtors' request for an adjournment and the case was converted on July 29, 2011.

14. Upon the conversion of the Debtors' cases, I began to work on completing the schedules and statements of financial affairs for each of the Debtors' eight estates. Obtaining the information from the Debtors to complete these filings was excruciatingly difficult. For example, while the Debtors informed me for the first time on July 10, 2011, that Mr. Moran received all of the shares in the Debtor companies, while attempting to finalize the statement of financial affairs on August 3 and August 4, 2011, the Debtors informed me that the transfer of

the shares to Mr. Moran was conditional upon Comerica approving the assignment of the leases of the buses from the Debtor companies to Northeast Transportation.

15. I believed that the failure to disclose to the Court the conditional nature of the transfer of the shares could be materially misleading. As a result, I believed I was obligated under the NY Rules of Professional Conduct to request an ex-parte communication with the Court and inform the following parties: (i) the US Trustee; (ii) counsel to the Chapter 7 Trustee; and (iii) counsel to Comerica Bank. I did that immediately.

16. As a direct result of the Debtors' unwillingness to cooperate and to give critical information to me throughout my tenure as the Debtor's counsel, the representation has been and continues to be unreasonably difficult, and I cannot effectively represent the Debtors any longer.

17. I understand that since the Petition Date, the Debtors have been working with Robert Prignoli, Esq. who is admitted to practice in this Court. Accordingly, if the Court grants the relief requested by AKO, the Debtors will not be prejudiced by any delay.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Dated: New York, New York
       August 7, 2011

                                                    s/Todd E. Duffy
                                                    **Todd E. Duffy**