ANDERSON KILL & OLICK, P.C.
*Attorneys for Debtor*
1251 Avenue of the Americas
New York, New York 10022
Telephone: (212) 278-1000
Facsimile: (212) 278-1733
Todd E. Duffy
Dennis J. Nolan

| UNITED STATES BANKRUPTCY COURT EASTERN DISTRICT OF NEW YORK | |
|---|---|
| In re:<br><br>USA United Fleet, Inc.,<br>*a/k/a Shoreline Fleet, Inc.*<br><br>Debtor. | Chapter 7<br><br>Case No. 11-45867 (JF) |
| In re:<br><br>USA United Holdings, Inc.,<br>*a/k/a Shoreline Merge, Inc.*<br><br>Debtor. | Chapter 7<br><br>Case No. 11-45868 (JF) |
| In re:<br><br>United Fleet, Inc.,<br><br>Debtor. | Chapter 7<br><br>Case No. 11-45869 (JF) |
| In re:<br><br>United Tom Tom Transportation, Inc.,<br>*a/k/a Shoreline Buses, Inc.*<br><br>Debtor. | Chapter 7<br><br>Case No. 11-45872 (JF) |
| In re:<br><br>USA United Bus Express, Inc.,<br>*a/k/a Shoreline Bus Express, Inc.*<br><br>Debtor. | Chapter 7<br><br>Case No. 11-45873 (JF) |

| | |
|---|---|
| In re:<br><br>USA United Transit, Inc.,<br>*a/k/a Shoreline Pupil Transit, Inc.*<br><br>        Debtor. | Chapter 7<br><br>Case No. 11-45875 (JF) |
| In re:<br><br>Tom Tom Escorts Only, Inc.,<br><br>        Debtor. | Chapter 7<br><br>Case No. 11-45876 (JF) |
| In re:<br><br>Shoreline Transit, Inc.,<br><br>        Debtor. | Chapter 7<br><br>Case No. 11-45877 (JF) |

## OBJECTION OF ANDERSON KILL & OLICK, P.C. TO STIPULATION AND ORDER AUTHORIZING SURCHARGE PURSUANT TO 11 U.S.C. § 506(c) FOR THE TRUSTEE'S COMMISSIONS AND EXPENSES AND COMPENSATION OF THE TRUSTEE'S PROFESSIONALS

**TO THE HONORABLE JEROME FELLER**
**UNITED STATES BANKRUPTCY JUDGE:**

Anderson Kill & Olick, P.C. ("**AKO**"), counsel to the above-captioned Debtors

(collectively, the "**Debtors**"), hereby submits this limited objection (the "**Objection**") to

the Stipulation and Order Authorizing Surcharge Pursuant to 11 U.S.C. § 506(c) for the

Trustee's Commissions and Expenses and Compensation of the Trustee's Professionals

filed August 9, 2011 (the "**Stipulation**").  In support of the Objection, AKO respectfully

represents as follows:

**BACKGROUND**

1.      On July 6, 2011 (the "**Petition Date**"), the Debtors filed with this Court their respective voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**")(§§ 101-1532).

2.      On August 11, 2011, the Court entered an Order approving the Retention of AKO from the Petition Date through July 29, 2011.

3.      On or about June 17, 2004, Debtors United Holdings, United Tom Tom, United Bus, United Transit and United Fleet (collectively, the "**Companies**") entered into a loan agreement with Comerica Bank, N.A. ("**Comerica**") pursuant to which Comerica agreed to lend $10 million to the Companies (the "**Original Loan Agreement**"). Each of the Companies executed a term promissory note in favor of Comerica in the original principal amount of $10,000,000.00 (the "**2004 Term Note**"). The 2004 Term Note was later made subject to the Amended Loan Agreement (defined below).

4.      On or about October 30, 2007, the Companies executed an Amended and Restated Loan Agreement (the "**Restated Loan Agreement**") with Comerica. The Restated Loan Agreement amended and restated the Original Loan Agreement in its entirety.

5.      On or about April 21, 2010, the Companies and Comerica agreed to amend the Restated Loan Agreement (the "**Amended Loan Agreement**" and, collectively with the Original Loan Agreement and the Restated Loan Agreement, the "**Loan Agreement**"). Pursuant to an April 21, 2010 Assumption Agreement (the "**Assumption Agreement**"), Shoreline Merge assumed all of the obligations of its

predecessor United Holdings to Comerica under the Amended Loan Agreement.[1]  On

April 21, 2010, Shoreline Transit executed a Joinder Agreement (the "**Joinder**

**Agreement**") whereby it became a party to the Amended Loan Agreement.

6.       Pursuant to certain Modifications, dated April 21, 2010, Comerica and

Shoreline Buses, Shoreline Express, Shoreline Pupil, and Shoreline Fleet agreed that the

names on the Amended Loan Agreement and all related documents would be changed to

reflect the name changes to these entities.

7.       That same date, in connection with the Amended Loan Agreement, each

Borrower executed: (1) a demand note in favor of Comerica in the original principal

amount of $3,000,000.00; (2) a promissory note in favor of Comerica in the original

principal amount of $1,050,000.00; and (3) a promissory note in favor of Comerica in the

original principal amount of $4,109,237.05 (collectively with the 2004 Term Note, the

"**Notes**").

8.       To secure the repayment of the loans made by Comerica under the

Amended Loan Agreement and the Notes, each Borrower executed a security agreement

in favor of Comerica (collectively, the "**Security Agreements**").

9.       The Security Agreements grant Comerica a first priority security interest

in, and lien upon, substantially all assets of each respective Borrower, including, but not

limited to, all accounts, general intangibles, inventory, equipment, fixtures, software,

goods, money, deposits, and all products and proceeds of the foregoing as more fully set

forth in the Security Agreements (the "**Collateral**"), including the Debtors' vehicles.

---

[1] Shoreline Merge is the successor by merger to United Holdings; Shoreline Bus was f/k/a United Tom Tom; Shoreline Express was f/k/a United Express; and Shoreline Pupil was f/k/a United Transit; Shoreline Fleet was f/k/a USA United Fleet.

10.     In or around April 2011, Comerica issued revised notes as a result of unlateral changes in the credit structure and timing of the effective date of various notes as opposed to the actual date the notes were processed.  As a result of these "adjustments", Comerica charged the Debtors more than $1.5 million.  On or about April 20, 2011, Comerica sent a notice declaring the Debtors in default on the loan and claimed that the Debtors owe over $10 million in principal and interest under the loan facility.

11.     Prior to the Petition Date, AKO attorneys met with Comerica to assist the Debtors with a work-out of the loan facility.  During that meeting, Comerica and their counsel complained that they were unable to obtain information from the Debtors' principals to properly consider modification of the loan terms.

12.     After the Petition Date, AKO attorneys worked with Comerica, not only to obtain a consensual use of cash collateral, but also to continue efforts to restructure the loan to allow the Debtors a meaningful opportunity to reorganize their operations and emerge from chapter 11 successfully.  To that end, AKO determined what information Comerica required for the work-out and worked extensively with the Debtors to provide Comerica with significantly more information than they had prior to the Petition Date.

13.     In addition, contrary to the Debtors actions prior to AKO's involvement in these cases, when only a minute amount of information was provided to Comerica, AKO attorneys immediately informed Comerica of any and all information they learned from the Debtors' principals.

14.     On July 29, 2011, the Debtors' cases were converted to cases under chapter 7 of the Bankruptcy Code.

15.     Richard McCord (the "**Trustee**") was appointed the Debtors' chapter 7 trustee.

16.     On August 1, 2011, the Trustee contacted Todd E. Duffy, a shareholder of AKO and explained that he could not sign off on a proposed sale of the Debtors' assets unless the Debtors filed their schedules and statement of financial affairs by August 3, 2011.  If the Debtors could not comply with this request, the Trustee explained, the proposed buyer would walk away from the deal and deprive the estates of meaningful resources to address the significant claims of Comerica and the Amalgamated Transit Union Local 1181-1061, AFL-CIO Pension Fund and Welfare Fund, among others.

17.     A team of AKO personnel worked furiously to complete the schedules and statements of financial affairs and managed to accomplish the requested task even though the Debtors' principals were refused access to their books and records by the Trustee. AKO attorneys and staff worked for 109 hours to prepare the schedules, including information about the more than one thousand unsecured creditors, and statement of financial affairs and were finally able to file the schedules on August 3, 2011 at 3:00 a.m.

18.     On August 9, 2011, the Trustee filed the Stipulation.  The Stipulation provided for no payment to AKO.

19.     On August 11, 2011, the Trustee filed his motion to sell substantially all of the assets of the Debtors.

#### RELIEF REQUESTED AND THE BASIS THEREFOR

20.     AKO requests that this Court enter an order denying the requested Stipulation.

21.    The Stipulation relies on section 506(c) of the Bankruptcy Code, which states: "[t]he trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, including the payment of all ad valorem property taxes with respect to the property."  11 U.S.C. § 506(c)

22.    "Congress' intent in enacting § 506(c) was to assure that when a claim 'expends money to provide for the reasonable and necessary costs and expenses of preserving or disposing of secured creditor's collateral, the … debtor in possession is entitled to recover such expenses from the secured party or from the property securing an allowed secured claim held by such party." *In re Visual Industries, Inc.*, 57 F.3d 321, 325 (3d Cir. 1995)(citing 124 Cong. Rec. 32,398 (cum. ed. Sept. 28, 1978) *reprinted* in 1978 U.S. Code Cong. & Admin. News 6451).

23.    Allowing the relief requested in the Stipulation, which does not include the fees that AKO expended to preserve the sale that will benefit the Debtors' estates creates exactly the windfall for Comerica that Congress sought to avoid.

24.    Indeed, the Trustee specifically stated that he would not agree to any sale without the filing of the Debtors' schedules and statement of affairs.  Further, steps taken by AKO and approved by Comerica during the period of time the Debtors functioned as Debtors-in-Possession were taken to preserve the estate and, in some cases, even augmenting their value.

25.    Of course, AKO submits that it is only appropriate given the priority scheme set out in the Bankruptcy Code,  that the Trustee and his professionals be paid before AKO.  However, once the obligations of the Trustee are satisfied, Comerica has an

equitable obligation to pay from its collateral the fees incurred by AKO that were

necessary and which  allowed the sale to move forward.

## CONCLUSION

26.    Accordingly, AKO requests that this Court deny approval of the

Stipulation and grant it any further and other relief it deems just and proper.

Dated: New York, New York
       August 12, 2011

                  ANDERSON KILL & OLICK, P.C.


                By:    */s/ Todd E. Duffy*
                     Todd E. Duffy
                     Dennis J. Nolan
                     1251 Avenue of the Americas
                     New York, New York 10022
                     Tel: (212) 278-1000
                     Fax: (212) 278-1733