**Response Date: February 5, 2013;12:00 p.m.**
**Hearing Date: February 7, 2013; 10:00 a.m.**

Andrew Goldman, Esq.
Nancy Manzer, Esq.
WILMER CUTLER PICKERING HALE
 AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Andrew.Goldman@wilmerhale.com
Nancy.Manzer@wilmerhale.com
212 230 8800 (phone)
212 230 8888 (fax)
*Counsel for Reliant Transportation, Inc. (f/k/a MV Transportation, Inc.)*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 7 |
| USA UNITED FLEET INC., a/k/a<br>SHORELINE FLEET, INC., *et al.* | Case No. 11-45867-jf<br>Jointly Administered |
| Debtors. | |

-------------------------------------------------------------X

**MOTION TO ENFORCE ORDER AUTHORIZING AND APPROVING SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**TO: HONORABLE JEROME FELLER**

    **UNITED STATES BANKRUPTCY JUDGE**

Reliant Transportation, Inc., formerly known as MV Transportation, Inc. ("Reliant"), hereby moves the Court for an order enforcing the terms of this Court's August 15, 2011 Order Authorizing and Approving the Sale of Substantially All of the Debtors' Assets and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, Subject to

Higher and Better Offers, Pursuant to 11 U.S.C. §§ 105, 363 and 365 and Fed. R. Bank. P. 6004 and 6006; and Granting Related Relief [Dkt. No. 140] (the "Sale Order").

## INTRODUCTION

In early summer 2011, with only seven weeks remaining until the New York City public school year began, the Debtors filed for bankruptcy protection. Once the cases were converted to chapter 7, the Chapter 7 Trustee began an expedited search for a buyer that would acquire those portions of the Debtors' business which carried New York City's school children (and special needs children) when schools reopened. Reliant stepped in, and through a sale process conducted with lightning speed, proposed a transaction under Section 363 of the Bankruptcy Code that allowed those school children to be transported without interruption.

That sale was approved by this Court by order dated August 15, 2011. The order authorized and approved the sale of the Debtors' assets related to the Debtors' New York City Department of Education bus transportation contracts to Reliant (the "Sale"), as detailed in an Asset Purchase Agreement ("APA") between the Debtors and Reliant. The clear intent of the APA, and, more importantly, the clear import of the Sale Order, was that Reliant would take the assets "free and clear" of liabilities associated with the fact that the assets were previously owned by the Debtors. Specifically, Reliant would not —as the result of the purchase of a limited number of the Debtors' assets—acquire any liability as the result of the Debtors' prepetition conduct, or be treated as the successor to any of the Debtors by virtue of its having acquired a very circumscribed subset of the Debtors' assets.

The New York Department of Labor, Unemployment Insurance Division ("DOL") now seeks—in plain violation of this Court's order—to impose on Reliant exactly the type of liability from which the APA and the Sale Order were intended to protect Reliant. After the Sale was

consummated, the DOL determined that because Reliant had purchased assets related to the Debtors' business, it had somehow succeeded to the Debtors' unemployment experience rating, which affected the quantum of unemployment contributions that Reliant was required to make. Thereafter, and ignoring the "363 free and clear language" contained in numerous provisions of this Court's prior Sale Order, the DOL assessed Reliant with an additional $1,306,733.77 in unemployment contributions and took those funds (the "Funds") from Reliant's bank accounts.

Reliant's counsel thereafter protested the DOL's taking of these Funds, explaining the circumstances that had given rise to the expedited Sale, the "free and clear" nature of the Sale Order, and the fact that the DOL's position violated both the language and spirit of Bankruptcy Code Section 363 and this Court's Sale Order. On January 11, 2013, the DOL responded (the "DOL Response"). The DOL Response simply reaffirms the DOL's prior determination, and ignores completely the bankruptcy law overlay to Reliant's position. The DOL Response fails to address this Court's Sale Order or Reliant's view that by improperly saddling Reliant with the Debtors' "unemployment experience rating," the DOL has violated this Court's Sale Order. Because the DOL's conduct implicates both this Court's Sale Order (which explicitly reserves the Court's jurisdiction to interpret, implement and enforce the Order), and ignores well established "free and clear" principles of bankruptcy law, Reliant respectfully requests that the Court enforce the Sale Order by entering an order declaring that the DOL's seizure of Reliant's Funds based on the transfer of the Debtors' unemployment experience was a violation of the Sale Order.

## BACKGROUND

### Debtors' Bankruptcy Cases

1. On July 6, 2011, USA United Fleet, Inc., a/k/a Shoreline Fleet, Inc., USA United Holdings Inc., a/k/a Shoreline Merge, Inc.; United Fleet, Inc.; United Tom Tom Transportation Inc., a/k/a Shoreline Buses, Inc..; USA United Bus Express Inc., a/k/a Shoreline Bus Express, Inc.; USA United Transit Inc., a/k/a USA United Pupil Transit, Inc.; Tom Tom Escorts Only, Inc.; and Shoreline Transit Inc. (collectively, the "United Debtors") each commenced a voluntary case under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2. On July 29, 2011, the Court converted each of the United Debtors' Chapter 11 cases to a case under Chapter 7 of the Bankruptcy Code.

3. By Order dated July 29, 2011, Richard J. McCord, Esq. (the "Trustee") was appointed the Chapter 7 Trustee of each of the converted cases of the United Debtors.

4. On August 10, 2011, Northeast Transit, Inc., Northeast Buses, Inc., and Northern Transit, Inc. (collectively, the "Northeast Debtors") each filed voluntary Chapter 7 cases, and Richard J. McCord, Esq. was appointed as the Trustee in each of those cases.

5. On October 28, 2011, the Court entered an order directing the procedural consolidation and joint administration of the Chapter 7 cases of all the United Debtors and the Northeast Debtors.

### Sale of Assets to MV Transportation

6. After his appointment, the Trustee immediately commenced a sale process for certain of USA United's assets. Specifically, the Chapter 7 Trustee understood the need to consummate the sale of the Debtors' New York City Department of Education busing agreements (the "DOE Contracts") to a purchaser who could—in the seven weeks before school

was to resume—take over those limited operations and ensure that the thousands of children who relied on the Debtors for school busing could get to/from school uninterrupted. The Chapter 7 Trustee immediately contacted Reliant (then known as MV Transportation, Inc.) and requested that Reliant consider acquiring a limited number of assets – namely, the DOE Contracts. The Department of Education was understandably quite active in the process, also concerned that any buyer had to be ready to provide school bus service to the children of New York's five boroughs by the start of the school year seven weeks later. Reliant commenced an expedited diligence process, which resulted in its execution of an asset purchase agreement (the "APA"), attached as Exhibit A.

7. Pursuant to the APA, Reliant acquired a discreet set of assets from the USA United Debtors (principally certain buses) and the Northeast Debtors (the DOE Contracts). The assets acquired by Reliant are specifically set forth in the APA (*see* Exhibit A, Section 1.1, Definitions of "Acquired Assets" and "Business"; and Ex. A thereto) and are limited to assets relating to the DOE Contracts.

8. Pursuant to the APA, Reliant assumed only a very narrow and limited set of liabilities. The only tax liabilities it assumed were limited to specific and capped liabilities to the IRS. The definition of "Assumed Liabilities" in the APA specifically excludes any obligations of the Debtors to "any other taxing authorities or governmental entities." APA, Section 1.1, Definition of "Assumed Liabilities."

9. Pursuant to the APA, Reliant acquired the assets "free and clear" of any "Liens, Claims, Interests, or Encumbrances." APA, Section 2.1, and the sale was contingent upon an order of the Court approving the sale of the assets free and clear of any Liens, Claims, Interests or Encumbrances. APA, Sections 8.1; 1.1 (Definition of "Sale Approval Order").

10. On August 10, 2011, the Trustee filed a motion (the "Sale Motion") for an order (1) approving sale procedures, (ii) approving the asset purchase agreement between the Trustee and MV Transportation, Inc. and the proposed sale of assets, and (iii) approving the assumption and assignment of the DOE Contracts and the collective bargaining agreement with the Union. Dkt. No. 101. Notice of the Sale Motion was given to all parties in interest, including the DOL. *See* Affidavit of Service, Dkt. No. 126.[1]

11. The hearing on the Sale Motion took place on August 15, 2011. At the conclusion of the hearing, the Court indicated that it would grant the motion and approve the sale. The Sale Order was entered that same day. Dkt. No. 140.

12. Closing on the sale took place on August 18, 2011. At the request of the parties, on that same day, the Court entered an order Modifying the Sale Order to correct the name of the Buyer from MV Transit, Inc. to MV Transportation, Inc. Dkt. No. 148.

13. The Sale Order approved the APA in its entirety. Sale Order ¶¶ 2, 26.

14. Paragraph 6 of the Sale Order provides that:

> No Interests, and no successor, transferee or similar liability claim, shall bear against or attach or otherwise affect the Acquired Assets or the Buyer except as set forth in the Agreement with respect to the Collective Bargaining Agreements.

15. "Interests" is defined in the Order as including "any and all interests (including any successor, transferee or similar liability), liens . . ., claims . . ., liabilities, mortgages, deeds, trusts, guarantees, security agreements, security interests, pledges, privileges, options, easements,

---

[1] Notice was given to NYS Employment Taxes in Binghamton. Notice was also provided to NYS Department of Taxation & Finance, Bankruptcy Section, in Albany.

servitudes, encroachments, hypothecations, charges, obligations, rights, restrictions, charges and encumbrances in or with respect to any of the Acquired Assets." Sale Order ¶ I.

16. Paragraph 10 of the Sale Order provides that:

> At Closing, all right, title and interest in and to the Acquired Assets shall immediately vest in Buyer . . . free and clear of any and all Interests in or with respect to any of the Acquired Assets, and without any successor, transferee or similar liability on the part of Buyer, except as set forth in the Agreement with respect to the Collective Bargaining Agreements, and this Order shall constitute conclusive written evidence of the termination of any Interests in the Acquired Assets and the release by any holder of such Interests except as set forth in the Agreement with respect to the Collective Bargaining Agreements.

17. In Paragraph 25 of the Sale Order, the Court retained jurisdiction to "interpret, implement and enforce" the provisions of the Sale Order.

**The DOL's Transfer of the Debtors' Unemployment Experience to Reliant**

18. In May and June 2012, the DOL sent letters informing Reliant that "as a result of the total transfer of experience from [the USA United Entities][2], all effective August 15, 2011," Reliant's tax rates and/or experience rating account balances had been revised, and that as a result of these transfers of experience, Reliant's account was underpaid. Thereafter, the DOL unilaterally debited $1,306,733.77 (the "Funds") from Reliant's bank account. Reliant's counsel thereafter protested the DOL's taking of the Funds in a letter brief (a copy of which is attached hereto as Exhibit B), explaining the circumstances which had given rise to the expedited Sale,

---

[2] In its Determination, the DOL states that "a transfer of experience is in order from the accounts of Tom Tom Casuals, Inc., DDND Inc and DNDND Inc " all of which were "entities related to USA United Fleet, Inc which reported the employees related to its school bus business." DOL Response, at 1. The DDND Inc. and DNDND Inc. entities were not filed as part of the USA United bankruptcy case and were never identified as related entities in the bankruptcy case.

the "free and clear" nature of the Sale Order, and the fact that the DOL's position violated both the language and spirit of Bankruptcy Code Section 363 and this Court's Sale Order. The DOL Response, dated January 11, 2013, reaffirms the DOL's prior determination. It ignores completely the bankruptcy law overlay to Reliant's position and does not address this Court's Sale Order. *See* Exhibit C.

## Basis for Relief

19. By its plain terms, the Sale Order provided that the assets that Reliant purchased from the Debtors were transferred to Reliant free and clear of any interests in that property. Under well-established applicable precedent, the right held by the DOL to assess unemployment taxes on a purchaser of the Debtor's assets based on the pre-sale unemployment experience of the Debtors was such an interest. Thus, the DOL's efforts to impute the Debtors' unemployment experience to Reliant and use that experience to collect additional unemployment contributions from Reliant are barred by the Sale Order.

**I.     The DOL's Right to Impute to Reliant the Unemployment Experience of Debtors Was an Interest in Property of Debtors.**

20. The Sale Order specifically provides that the Acquired Assets "shall vest immediately in [Reliant] . . . free and clear of any all Interests in or with respect to any of the Acquired Assets, and without any successor, transferee or similar liability on the part of the Buyer," except as set forth in the Agreement. Sale Order ¶ 10. It further provides that the Order shall constitute conclusive written evidence of the termination of any Interests in the Acquired Assets and the release by any holders of such Interests." *Id.* ¶ 10.

21. The Sale Order defines the term "Interests" broadly—it includes "any and all interests (including any successor, transferee or similar liability)." Sale Order ¶ I. There is no

8

doubt that as used in the Sale Order, the term "Interest," at a minimum, encompassed the full scope of an "interest" as that term is used in Section 363(f) of the Bankruptcy Code. Under well-established precedent within the Second Circuit, the DOL's statutory right with respect to the transfer of unemployment experience constitutes an "interest" with the meaning of the Sale Order and Section 363(f).

22. Although the federal courts in New York have not specifically addressed the application of Section 363(f) to a state's right to transfer the unemployment experience of a debtor to a purchaser of the debtor's assets, they have consistently held that state law successor liability claims are indisputably "interests" subject to Section 363(f)'s free and clear provisions. In doing so, they have refused to limit "interests in property" to "*in rem*" interests, but instead have construed the term to include liability that arises from the transfer of the debtor's property. *See In re Chrysler, LLC*, 405 B.R. 84, 111 (Bankr. S.D.N.Y. 2009) (holding that "any potential state successor or transferee liability claims against New Chrysler, as well as *in rem* interests, are encompassed by section 363(f) and are therefore extinguished by the Sale Transaction"), *affirmed,* 576 F.3d 108 (2d Cir. 2009), *vacated as moot by Indiana State Police Pension Trust v. Chrysler LLC,* ____ U.S. ___, 130 S. Ct. 1015 (2009); *In re General Motors Corp.*, 407 B.R. 463, 503-04 (Bankr. S.D.N.Y. 2009) (reaching same result, citing to *Chrysler*) ("*GM*"). Although the Second Circuit's affirmance of the Bankruptcy Court's order in *Chrysler* was vacated by the Supreme Court when the petition for certiorari was denied after the sale closed and the matter became, in effect, equitably moot, the Second Circuit reached the same conclusion as the *Chrysler* bankruptcy court with respect to the scope of Section 363(f):

> It is the transfer of Old Chrysler's tangible and intellectual property to New Chrysler that could lead to successor liability (where applicable under state law) in the absence of the Sale

> Order's liability provisions. Because appellants' claims arose from Old Chrysler's property, § 363(f) permitted the bankruptcy court to authorize the Sale free and clear of appellants' interest in the property.

*In re Chrysler,* LLC, 576 F.3d 108, 126 (2d Cir. 2009), *vacated as moot by Indiana State Police Pension Trust v. Chrysler LLC,* ____ U.S. ___, 130 S. Ct. 1015 (2009).[3]

23. While the interests addressed in the *Chrysler* and *GM* cases were tort claims based on successor liability and not tax-related claims, with respect to the application of Section 363(f), the nature of the DOL's interest here is materially identical to the successor liability claims at issue in *Chrysler* and *GM*. Indeed, in *GM,* the court recognized that tax liability based on the treatment of a purchaser as the successor of a debtor was essentially the same as the successor liability claims before the court. In *GM*, the Bankruptcy Court noted that while in the Second Circuit the law was clear that Section 363(f) permitted the sale free and clear of successor liability claims, some courts in other jurisdictions had reached contrary conclusions. Specifically, the *GM* Court cited *In re Wolverine Radio Company*, 930 F.2d 1132 (6th Cir. 1991), a Sixth Circuit case that concluded that the right under Michigan law to transfer the debtor's unemployment rating account to the purchaser of the debtor's assets did not constitute an interest within the meaning of Section 363(f). *In re General Motors Corp.*, 407 B.R. at 503-504 & n.101.

---

[3] In reaching its conclusion as to the appropriate scope of section 363(f), the Second Circuit relied on other federal courts that had adopted a broad definition of "interest" as it is used in Section 363(f). *See, e.g., In re Trans World Airlines*, 322 F.3d 283, 288-90 (3d Cir. 2003)(employment discrimination claims constituted "interests in property" under Section 363(f)); *In re Leckie Smokeless Coal Co.*, 99 F.3d 573 (4th Cir. 1996)(holding that rights of pension fund and benefit plan to collect premium payments from debtor constitute interests in the debtor's assets as there was relationship between right to demand payments and use of assets).

24. Other than the Sixth Circuit's decision in *In re Wolverine*, <u>which the court in GM recognized was contrary to Second Circuit law</u>, the only other case of which Reliant is aware that addresses specifically the issue of whether a state's right to transfer unemployment experience is subject to the free and clear provisions of Section 363(f) is *In re PBBPC, Inc.*, 467 B.R. 1, 9 (Bankr. D. Mass. 2012). The material facts in *PBBPC* are almost identical to those here. In that case, the Massachusetts Department of Workforce Development, Division of Unemployment Assistance (the "DUA") imputed the experience rating of the debtor to an entity that had purchased the debtor's assets through a bankruptcy sale pursuant to Section 363(f), resulting in a higher contribution rate for the purchaser than the purchaser would have otherwise obtained. In a motion to enforce the sale order, the purchaser asserted that by imputing the debtor's experience rating to the purchaser, the DUA had violated the sale order. The *PBBPC* bankruptcy court concluded that the DUA's right to impute the experience of the debtor to the purchaser was an "interest" in the estate assets and that the sale order precluded the DUA from imputing the debtor's experience to the purchaser. It noted that the statutory provision "imposes a debtor's experience rating on the buyer precisely because, and only because, the buyer purchased assets of the bankruptcy estate. By operation of the state statute, the debtor's experience rating travels with the assets and encumbers their purchaser." *PBBPC*, 467 B.R. at 9.

25. That exact same analysis applies here. Pursuant to Section 581 of New York Labor Law, when an employer "transfers his or its organization, trade or business in whole in part, the transferee shall take over and continue the employer's account, including its balance and all other aspects of its experience under the article." NY Labor Law § 581.4(a). A transfer of business is deemed to occur when the transferee assumes any of the transferring employer's obligations, the transferee acquires any of the transferring employer's goodwill, the transferee

11

continues or resumes the business of the transferring employer either in the same establishment or elsewhere, or the transferee employs substantially the same employees the transferring employer had in connection with the business. *Id.* § 581.4(c). And while the statute references facts other than the purchase of assets in determining whether a transfer is deemed to have occurred, case law regarding application of the statute makes clear that a transfer of assets is key. *See In the Matter of Control Building Services, Inc.,* 523 N.Y.S.2d 662 (N.Y. App. Div. 1988) (refusing to allow transfer of experience rating when transferee employer did not "purchase or acquire any of [alleged transferor's] equipment, machinery or assets" even though all the other conditions under § 581(c) had been met.)

26. Just as with the tort claims at issue in the *Chrysler* and *GM* cases, and the unemployment experience in *PBBPC*, the liability that the DOL seeks to impose on Reliant arises from the transfer of assets from the Debtors to Reliant. As such, it constitutes an interest in property of the Debtors under Section 363(f) and under the Sale Order.

## II.    The DOL's Interest in Property of the Debtors Satisfied At Least One of the Conditions in Section 363(f)

27. Pursuant to Section 363(f), property of the Debtor may be sold free and clear of any interests in that property if any one of the conditions listed in clauses (1) through (5) of Section 363(f) is satisfied:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interests;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the prices at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or

12

>   (5) such entity could be compelled, in a legal or equitable
>   proceeding to accept a money satisfaction of such interest

28.     Having not challenged the order directly, the DOL may not now challenge whether the Sale Order was properly issued.  But even if the correctness of the "free and sale" order were open to being relitigated, the Sale Order clearly satisfied at least one of the conditions of Section 363(f).  *First,* Clause (5) is satisfied.  Given that a right to collect taxes is by nature the right to collect payment of money, the DOL could be compelled in a legal or equitable proceeding to accept a money satisfaction of the interest it held in the property at the time of the sale.  *See PBBPC*, 467 B.R. at 8 (finding that interest in assessing unemployment contributions based on transferred unemployment experience "is a right of taxation, a right that is usually, ordinarily, preferredly, and probably exclusively satisfied precisely by the payment of money" and therefore satisfied Section 363(f)(5)).  In addition, Clause (2) was satisfied because the DOL did not object to the Sale Motion.  Pursuant to the Sale Order, any person holding an Interest who had not objected to the Motion is deemed to have consented.

## Conclusion

Reliant was the only purchaser that came forward to buy the USA United buses and the DOE Contracts. Had Reliant known that the purchase of these limited assets was going to expose Reliant's business to the Debtors' poor unemployment tax rating (and as a result Reliant would be charged with additional liability exceeding $1 million dollars), Reliant would not have entered into the APA. As the United States Court of Appeals for the Fourth Circuit recognized in a similar context,  it may very well be that application of the statute in a way that recognizes the free and clear nature of a bankruptcy sale "protects the [DOL's] interests more effectively than a contrary rule." *Leckie Smokeless Coal*, 99 F.3d at 586-87.   If sales free and clear of

debtors' experience ratings are not effective, fewer assets will be purchased out of bankruptcy, more businesses will simply be closed, and there may well be fewer jobs and more unemployment claims.

For all the reasons stated herein, the Court should grant the Motion and enter an order declaring that the DOL's seizure of Reliant's Funds based on the transfer of the Debtors' unemployment experience was a violation of the Sale Order.

Dated:  January 28, 2013

                            Respectfully submitted,

                            /s/ Andrew Goldman_____
                            Andrew Goldman
                            Nancy Manzer
                            WILMER CUTLER PICKERING HALE AND DORR
                            7 World Trade Center
                            250 Greenwich Street
                            New York, NY  10007
                            Andrew.Goldman@wilmerhale.com
                            Nancy.Manzer@wilmerhale.com
                            212 230 8800 (phone)
                            212 230 8888 (fax)