**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X

In re                                             Chapter 7

    **USA UNITED FLEET INC., a/k/a**        Case No. 1-11-45867-jf
    **SHORELINE FLEET, INC.**, *et al.*,

           **Debtors.**              (Jointly Administered)

---------------------------------------------------------X


**DECISION AND ORDER ON MOTION TO ENFORCE SALE ORDER**


**APPEARANCES:**

Andrew Goldman, Esq.                    Eric T. Schneiderman, Esq.
Craig Goldblatt, Esq.                   ATTORNEY GENERAL OF THE STATE
Nancy Manzer, Esq.                      OF NEW YORK
WILMER CUTLER PICKERING HALE            Terri Gerstein, Esq.
AND DORR                                Steven Koton, Esq.
7 World Trade Center                    120 Broadway, 26th Floor
250 Greenwich Street                    New York, NY 10271
New York, NY 10007                      *Attorneys for the New York State*
*Attorneys for Reliant Transportation, Inc.*   *Department of Labor*


                        **Jerome Feller**
               **United States Bankruptcy Judge**

Following a sale pursuant to 11 U.S.C. § 363(b) of certain assets of the debtors ("Debtors") in these jointly administered Chapter 7 cases, the New York State Department of Labor ("DOL") used the Debtors' prepetition unemployment insurance experience rate ("experience rating") to calculate the post-petition unemployment insurance tax liability of the purchaser, Reliant Transportation, Inc. (f/k/a MV Transportation, Inc.) ("Reliant"). Reliant seeks a determination that under the sale order and Section 363(f), its purchase of the Debtors' assets was free and clear of successor liability for the Debtors' experience rating. The DOL argues this Court lacks subject-matter jurisdiction under 11 U.S.C. § 505(a)(1) and/or the Tax Injunction Act, 28 U.S.C. § 1341 ("TIA"); and, even if it did have jurisdiction, it should find that a rating associated with an employer account is a computational device used to determine prospective tax rates, and not an "interest" of the DOL in property within the meaning of Section 363(f).

Based on the entire record and applicable law, the Court concludes: (i) it has subject-matter jurisdiction to interpret and enforce the sale order; (ii) the DOL has an interest in the assets purchased by Reliant within the meaning of Section 363(f); and (iii) this interest was subject to the "free and clear" provisions of the sale order and Section 363(f).

## I.

Prior to filing their petitions, the Debtors provided New York City school bus transportation services pursuant to six contracts with the City's Department of Education ("DOE Contracts"). On July 6, 2011, eight of the debtors ("United Debtors") filed voluntary petitions for relief under Chapter 11 of title 11 of the United States Code ("Bankruptcy Code"). The United States Trustee sought to convert each of the cases to Chapter 7 pursuant to 11 U.S.C. § 1112(b)(4). One of the grounds was the United Debtors' failure to disclose their transfer of the DOE Contracts to certain non-debtor affiliates ("Northeast Debtors"). ECF No. 29-1 at 2. On

July 29, the United Debtors' cases were converted to Chapter 7, and a trustee was appointed to administer their estates. ECF No. 45. On August 10, the Northeast Debtors filed petitions for relief under Chapter 7 of the Bankruptcy Code, and the same trustee was appointed to their cases.

That same day, the trustee sought an expedited hearing on the approval of a $12 million sale to Reliant of the United Debtors' 400 or more buses and the Northeast Debtors' DOE Contracts ("Acquired Assets"). ECF Nos. 100; 101. The trustee requested shortened notice on grounds that "the DOE Contracts will lose their value within the next few weeks unless a purchaser can come in and immediately utilize the Buses to perform under the DOE Contracts." ECF No. 100-2 ¶ 4. The trustee stated that he had "been advised that should it appear that the Debtors cannot perform under the DOE Contracts, [] the DOE will offer the DOE Contracts for bid to other bus companies[,]" and if this were to occur "the value of the assets of these Chapter 7 estates will plummet precipitously, to the detriment of the estates and their respective creditors." *Id.* ¶ 6.[1]

The Court granted the trustee's application, scheduled a sale hearing for August 15, 2011, and established the time and manner of service. ECF No. 102. Service was completed on August 10 as directed by the Court. ECF No. 126. The DOL was served at various locations and does not contest service. *Id.* On August 15, the Court held the sale hearing, approved the sale, and entered the sale order. ECF No. 140. On August 18, the sale closed.

Under the sale order, Reliant received the Acquired Assets "free and clear" of "interests" which third parties may have in those assets. "Interests" are defined to include "any and all interests (including any successor, transferee or similar liability), liens . . ., claims . . ., liabilities, . . . charges, obligations, rights, restrictions, [ ] and encumbrances in or with respect to any of the

---

[1] The trustee also noted that the sale of the Debtors' assets under the Asset Purchase Agreement would "save the jobs of hundreds of employees, as the [Asset Purchase Agreement] provides for the assumption and assignment of" certain collective bargaining agreements. *Id.* ¶ 4.

Acquired Assets . . . ." ECF No. 140 ¶ I. The sale order further provides, "[n]o Interests, and no successor, transferee or similar liability claim, shall bear against or attach or otherwise affect the Acquired Assets or the Buyer except as set forth in" the Asset Purchase Agreement. *Id.* ¶ 6; *see id.* ¶ 10 ("At closing, all right, title and interest in and to the Acquired Assets shall immediately vest in Buyer . . . free and clear of any and all Interests in or with respect to any of the Acquired Assets, and without any successor, transferee or similar liability"). The Court retained jurisdiction to interpret, implement, and enforce the terms of the sale order. *Id.* ¶ 25.

By letters dated May 11 and June 28, 2012, the DOL informed Reliant that "[a]s a result of the total transfers of experience . . . all effective August 15, 2011, your tax rates and/or your experience rating account balances have been revised" pursuant to "New York State Unemployment Insurance Law which provides for the transfer of employment and unemployment experience when one employer acquires, in whole or in part, the business of another." ECF No. 378 (Attachment A). The DOL explained in the June 28 letter that:

> As a result of the transfers, your account registered an excess negative balance transfer on December 31, 2011 in the amount of $1,685,976.97. . . .
> We have adjusted your returns using the revised rate for the year 2011 based on total taxable wages of $10,975,411, and adjusted your return using the revised rate for the year 2012 based on taxable wages of $10,074,596. Your account is now underpaid $1,220,902.13.

*Id.* The DOL subsequently debited $1,306,733.77 from Reliant's bank account. ECF No. 358 ¶ 5.

Reliant filed its motion on January 28, 2013, and sought a hearing prior to the expiration of its time to initiate an appeal under state law. ECF Nos. 358; 359. The Court granted this request, and the parties stipulated to an adjourned hearing date. ECF Nos. 360; 367. The DOL filed opposition on February 15 (ECF No. 378), and Reliant filed a reply on February 22 (ECF

4

No. 382). A hearing was held on February 26, 2013, at which counsel for Reliant and the DOL appeared and were heard, and the Court reserved decision.

**II.**

A Chapter 7 trustee is duty-bound to use the tools provided by the Bankruptcy Code to marshal and liquidate estate assets to achieve the highest possible return to creditors. One tool is Section 363(f), which permits the trustee, upon court approval, to sell estate property "free and clear of any interest in such property of an entity other than the estate" provided one of five alternative conditions is met. 11 U.S.C. § 363(f).[2] The purpose of allowing the sale of an asset "free and clear" of third-party interests is to "maximize the value of the asset, and thus enhance the payout made to creditors." *In re Mundy Ranch, Inc.*, 484 B.R. 416, 422 (Bankr. D.N.M. 2012) (citation omitted). Without this protection, it would be difficult to sell estate assets promptly, and "prospective buyers would be unwilling to pay a fair price for the property subject to sale; instead, the price would have to be discounted, perhaps quite substantially, to account for the liabilities that the buyer would face simply as a result of acquiring the asset." *Id.* at 422 (citation omitted). In short, Section 363(f) is a powerful and necessary tool for achieving one of the primary purposes of the Bankruptcy Code. *See also Toibb v. Radloff*, 501 U.S. 157, 163 (1991) (recognizing the Bankruptcy Code's general policy of "maximizing the value of the bankruptcy estate").

---

[2] Those conditions are:
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f)(1)-(5). The Court does not address which conditions have been satisfied here because (i) the DOL did not respond to Reliant's argument that (2) and (5) are satisfied, and therefore that issue is not in dispute; and (ii) the Court specifically found and determined in the sale order that one or more of the Section 363(f) conditions were satisfied. ECF No. 140 ¶ I.

# III.

Under 28 U.S.C. §§ 1334 and 157(b)(2)(N), bankruptcy courts have core subject-matter jurisdiction to approve the sale of estate assets. It is also well-settled that bankruptcy courts have the "corollary jurisdiction to interpret and enforce their own [sale] orders . . . ." *Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 428 B.R. 43, 56-57 (S.D.N.Y. 2010), *aff'g*, *In re Gen. Motors Corp.*, 407 B.R. 463 (Bankr. S.D.N.Y. 2009) ("*GM*"); *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) ("*Travelers*"). As a general rule, when an order becomes final, a court's jurisdiction cannot be attacked collaterally by a party on notice. *Travelers*, 557 U.S. at 152-54; *see Kontrick v. Ryan*, 540 U.S. 443, 456 n.9 (2004) (per curiam) ("Even subject-matter jurisdiction [] may not be attacked collaterally.").

The DOL contests the Court's subject-matter jurisdiction based on 11 U.S.C. § 505(a)(1) and the TIA. Section 505(a)(1) permits adjudication of "the amount or legality of any tax" owed by a debtor, but does not confer authority to determine the tax liability of a non-debtor. 11 U.S.C. § 505(a)(1); *Brandt-Airflex Corp. v. L.I. Trust Co. (In re Brandt-Airflex Corp.)*, 843 F.2d 90, 96 (2d Cir. 1988). The DOL contends that the Court is being asked to determine the tax liability of Reliant, a non-debtor, and therefore does not have jurisdiction. ECF No. 378 at 8. Under the TIA, "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The DOL argues, "[t]o the extent that Reliant seeks to preclude the [DOL] from applying the transfer of experience rating provision as a factor in determining its tax rates, and prevent any further action to collect the resulting liabilities, the [TIA] deprives the Court of subject matter jurisdiction . . . ." ECF No. 378 at 8.

This jurisdictional challenge cannot be sustained. The DOL does not dispute the Court had jurisdiction to enter the sale order or that it retained jurisdiction to interpret, implement, and enforce its terms. Under *Travelers*, the Court's jurisdiction cannot now be attacked collaterally. 557 U.S. at 152-53. Moreover, Section 505(a)(1) and the TIA were not relevant to this Court's jurisdiction when it entered the sale order. First, the Court was exercising its jurisdiction under Section 363(f), not 505(a)(1). Second, even when a sale order affects a taxing authority's ability to collect a tax, the TIA does not act as a *per se* bar. *See In re Hechinger Inv. Co. of Del.*, 335 F.3d 243, 247 n.1 (3d Cir. 2003) ("*Hechinger*") ("It is well established [] that the [TIA] does not prevent a Bankruptcy Court from enforcing provisions of the Bankruptcy Code that affect the collection of state taxes.").[3]

As indicated, Section 505(a)(1) and the TIA would not have been relevant even if, at the time of the sale hearing, the DOL questioned whether the free and clear language applied to its right to transfer the experience rating to Reliant. 28 U.S.C. §§ 1334 and 157(b)(2)(N); *Hechinger*, 335 F.3d at 247 n.1. The primary difference between now and then is that the DOL assessed a tax on Reliant. This predicate is not sufficient to divest the Court of subject-matter jurisdiction for at least two reasons. First, accepting the DOL's position would permit a taxing authority to "sit out" a sale hearing over which a court has unquestioned jurisdiction, assess a tax, pursue its claim in another forum, and when hailed back to the bankruptcy court argue the TIA bars adjudication. This would not only undermine core federal bankruptcy jurisdiction, but also greatly undercut the purpose of Section 363(f). Second, the occurrence of an assessment does not alter the Court's task. The question before the Court is whether the sale order extinguishes the DOL's right to transfer the Debtors' experience rating to Reliant. The answer

---

[3] *See also Goldberg v. Ellett (In re Ellett)*, 254 F.3d 1135, 1148-49 (9th Cir. 2001) (holding the TIA does not bar enforcement of discharge injunctions that prevent collection of taxes); *Adams v. Indiana*, 795 F.2d 27, 29 (7th Cir. 1986) (holding the TIA does not bar applications of the automatic stay that prevent collection of taxes).

hinges upon whether the DOL's right to do so is an "interest" under Section 363(f). As explained

by a court in response to identical arguments raised by the DOL, this undertaking does not

implicate either Section 505(a)(1) or the TIA:

> The court is not being asked to determine the amount or legality of
> the tax liabilities of [purchasers], nor is the court being asked to
> enjoin, suspend, or restrain the assessment, levy or collection of
> unemployment insurance tax premiums from [purchasers]. [The
> purchasers] are not disputing that they are subject to
> unemployment insurance tax premiums. Rather, they seek a
> determination of whether their free and clear purchase of the
> Debtors' assets pursuant to the Sale Order extinguished the DoL's
> right to transfer the Debtors' experience ratings to [them] instead
> of applying a new employer rate.

*In re Tougher Indus.*, 2013 WL 1276501, at *6 (Bankr. N.D.N.Y. Mar. 27, 2013).

Accordingly, based on the entire record and applicable law, the Court concludes that it

has subject-matter jurisdiction over this matter.

## IV.

The Bankruptcy Code does not define the term "interest" or the phrase "any interest in

such property" (hereafter, "interest in property"). Courts adopting a narrow reading have limited

Section 363(f)'s reach to *in rem* property interests, most notably liens. However, it is hard to

reconcile this approach with the language of the statute and the underlying purposes of Section

363(f). The term "lien" is defined in 11 U.S.C. § 101(37), and therefore "it stands to reason that

Congress would have used the term 'lien' instead of 'interest,' had it intended to restrict the

scope of § 363(f) to liens." *WBQ P'ship v. Va. Dep't of Med. Assistance Servs. (In re WBQ*

*P'ship)*, 189 B.R. 97, 105 (Bankr. E.D. Va. 1995) ("*WBQ*"). And defining "interest in property"

to mean a "lien" would render superfluous one of the five alternative conditions for Section

363(f) relief – that "such interest is a lien" (11 U.S.C. § 363(f)(3)). *In re Trans World Airlines,*

*Inc.*, 322 F.3d 283, 290 (3d Cir. 2003) ("*TWA*"); *GM*, 407 B.R. at 501.

In *TWA*, the Third Circuit considered whether the bankruptcy court erred when it entered

a sale order that "had the effect of extinguishing the liability of" American Airlines, the

purchaser of TWA's assets, "as successor to TWA, for (1) employment discrimination claims

against TWA and (2) for the Travel Voucher Program awarded to TWA's flight attendants in

settlement of a sex discrimination class action." 322 F.3d at 285. The Equal Employment

Opportunity Commission ("EEOC") and the United States argued that "interests in property are

limited to liens, mortgages, money judgments, writs of garnishment and attachment, and the like,

and cannot encompass successor liability claims arising under federal antidiscrimination statutes

and judicial decrees implementing those statutes." *Id.* at 288 (internal quotation marks omitted).

The Third Circuit rejected this argument, reasoning that it was TWA's use and ownership of its

assets that gave rise to the successor liability claims:

> Had TWA not invested in airline assets, which required the
> employment of the EEOC claimants, those successor liability
> claims would not have arisen. Furthermore, TWA's investment in
> commercial aviation is inextricably linked to its employment of the
> Knox-Schillinger claimants as flight attendants, and its ability to
> distribute travel vouchers as part of the settlement agreement.

*TWA*, 322 F.3d at 290 (citing *UMWA 1992 Benefit Plan v. Leckie Smokeless Co. (In re Leckie*

*Smokeless Coal Co.)*, 99 F.3d 573 (4th Cir. 1996) ("*Leckie*"), *cert. denied*, 520 U.S. 1118 (1997);

*Folger Adam Sec., Inc. v. DeMatteis/MacGregor, JV*, 209 F.3d 252 (3d Cir. 2000) ("*Folger*")).

In other words, the Travel Voucher and EEOC claims are interests in property "in the sense that

they arise from the property being sold." *Id.*

The Second Circuit adopted the reasoning of *TWA* and *Leckie* to hold that products

liability claims are interests in property under Section 363(f):

> We agree with *TWA* and *Leckie* that the term "any interest in
> property" encompasses those claims that "arise from the property
> being sold." *See TWA*, 322 F.3d at 290. By analogy to *Leckie* (in

9

> which the relevant business was coal mining), "[appellants'] rights
> are grounded, at least in part, in the fact that [Old Chrysler's] very
> assets have been employed for [automobile production] purposes:
> if Appellees had never elected to put their assets to use in the
> [automobile] industry, and had taken up business in an altogether
> different area, [appellants] would have no right to seek
> [damages]." *Leckie*, 99 F.3d at 582.

*In re Chrysler LLC*, 576 F.3d 108, 126 (2d Cir.) ("*Chrysler*") (alterations in original), *granting cert. & vacating judgment as moot sub nom. Ind. State Police Pension Tr. v. Chrysler LLC*, --- U.S. ----, 130 S. Ct. 1015 (2009); *see Morgan Olson L.L.C. v. Frederico (In re Grumman Olson Indus.)*, 467 B.R. 694, 702 (S.D.N.Y. 2012) (stating "it is now generally agreed – including in this Circuit – that [Section 363(f)] may more broadly extinguish claims that 'arise from the property being sold'") (quoting *Chrysler*, 576 F.3d at 126); *GM*, 407 B.R. at 505-508 (holding that Section 363(f) applies to successor liability claims). Finally, under Section 363(f), "property" includes contracts to perform services. *See Chrysler*, 576 F.3d at 125 (citing *Myers v. United States*, 297 B.R. 774, 781 (S.D. Cal. 2003)).

## V.

Three courts have dealt with the issue of whether a state's right to transfer the experience rating of a debtor to the purchaser of the debtor's assets constitutes an interest in property within the meaning of Section 363(f). *Mich. Emp't Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132 (6th Cir. 1991) ("*Wolverine*"), *cert. dismissed*, 503 U.S. 978 (1992); *Mass. Dep't of Unemployment Assistance v. OPK Biotech, LLC (In re PBBPC, Inc.)*, 484 B.R. 860 (B.A.P. 1st Cir. 2013) ("*PBBPC*"); *Tougher Indus.*, 2013 WL 1276501. *PBBPC* and *Tougher Industries* held this right was an interest that could be extinguished by Section 363(f); *Wolverine* reached the opposite conclusion.

The DOL asserts that *PBBPC* improperly extends the reach of Section 363(f), and, in any event, is distinguishable. ECF No. 378 at 13.[4] The DOL distinguishes *PBBPC* on grounds that the court determined that the purchaser's liability flowed from the purchase of the assets alone, but under New York law the "transfer of experience determination" also depended on "Reliant's continuation of the business, and its employment of substantially the same employees as the predecessor entities." *Id.* The DOL further contends that "the controlling principle underlying the Second Circuit's definition of 'interest' is that a purchaser should not be responsible for the debtor's unsatisfied pre-petition obligations solely because it purchased the assets." *Id.* at 15 According to the DOL, Reliant's liability does not "arise from the property being sold" (*Id.* at 14), as an experience rating is "a statutory computational device used solely to determine prospective tax rates" and not a liability of the Debtors to the DOL (*Id.* at 11).

Reliant argues that "the nature of the DOL's interest [] is materially identical to the successor liability claims at issue in *Chrysler* and *GM*." ECF No. 359 ¶ 23. It contends, "[t]he fact that the DOL did not have a current claim against the Debtor or a lien on its property at the time of the sale is not the relevant inquiry." ECF No. 382 at 10-11. Instead, "[w]hat is dispositive is that the experience rating reflected by the account could be used by the DOL to raise the Debtors' tax rate – and that pursuant to Section 581.4 of the New York Labor Law, that right transferred with the Debtors' assets." *Id.* at 11; *see id.* at 14 ("[I]t is immaterial that the DOL may have looked to other factors in justifying their transfer of the Debtors' experience rating – it is the purchase of the business assets of the Debtors that led to the transfer of experience.").

## VI.

The DOL's right to apply the Debtors' experience rating to Reliant is an interest that arises from the property being transferred, including the DOE Contracts. This is because it is the

[4] *Tougher Industries* was decided after briefing and oral argument in this case.

11

Debtors' prior ownership and use of that property that gives the DOL a contingent right under New York law to assign the Debtors' experience rating to the purchaser of the property. *See Chrysler*, 576 F.3d at 126. The DOL's arguments to the contrary can be summarized as follows: (i) *Wolverine* correctly found that the right to transfer an experience rating is not an interest and (ii) the DOL does not hold an interest that "arise[s] from the property being sold" because (a) it did not have a prepetition right of payment from, or a claim against, the Debtors and (b) the experience rating is a statutory computational device that was triggered here, not because the Acquired Assets were purchased, but because Reliant continued the business and employed and paid substantially the same employees.

The DOL's reliance on *Wolverine* is misplaced, as that decision turns on a narrow reading of "interest in property." The court determined that the debtor's experience rating was not an interest in property because, *inter alia*, it did not "attach[] to property ownership so as to cloud its title." *Wolverine*, 930 F.2d at 1147. This restrictive interpretation is inconsistent with prevailing jurisprudence and has been rejected by courts in the Second Circuit.

It is irrelevant that the DOL did not have a right of payment from, or a claim against, the Debtors. For one, "interest" is not synonymous with the term "claim." Congress could have used the defined term "claim" (*see* 11 U.S.C. § 101(5)) instead of the term "interest," but did not. *See, e.g.*, *Chicago v. Envt'l Defense Fund*, 511 U.S. 328, 338 (1994) ("'It is generally presumed that Congress acts intentionally and purposely' when it 'includes particular language in one section of a statute but omits it in another.'") (quoting *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993)). The alternative condition in subparagraph (5) of Section 363(f) – "such entity could be compelled . . . to accept a money satisfaction of such interest" – should also make clear that interests are not limited to rights of payment. 11 U.S.C. § 363(f)(5). Thus, for example, the

Seventh Circuit held that a lessee's right of possession is an interest under Section 363(f).

*Precision Indus. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537 (7th Cir. 2003).

It is also not necessary for a right of payment to accrue prepetition. In a case cited by

*TWA* and *Leckie*, the court held that the right of Virginia's Department of Medical Assistance

Services ("DMAS") to recapture depreciation overpayments can be extinguished pursuant to

Section 363(f). *WBQ*, 189 B.R. at 105. DMAS' right to payment did not accrue until the property

was sold – in that case, in a bankruptcy sale under 11 U.S.C. § 363 – and unless the sale price

exceeded the asset's depreciated basis. *Id.* Furthermore, DMAS could only seek payment from

the purchaser if the seller failed to make payment. The court explained:

> In essence, DMAS's right of recapture runs with the property, so it
> is more than a mere claim against the debtor. DMAS's right of
> recapture is an "interest in property" insofar as it grants DMAS the
> right to proceed against the transferee. DMAS emphasizes that it
> has a "contingent" interest since its right of recapture depends on
> whether a gain is realized from the sale, and whether the seller
> reimburses DMAS for the recaptured depreciation. Yet the plain
> terms of § 363(f) refer to "any interest." Accordingly, DMAS's
> "contingent interest" is not exempt from the reach of § 363(f).

*Id.* (citations omitted). Even though DMAS did not have a prepetition claim against the debtor,

and its entitlement to recovery was contingent on future events, its right of recapture was deemed

to be an interest under Section 363(f) because it ran with the property.

By the same token, even though the DOL did not have a claim or right of payment with

respect to the Debtors or their property, it had a contingent right to apply the Debtors' experience

rating if the Debtors' property was transferred to a third-party who then put it to use. Thus, while

the DOL makes much of N.Y. Lab. Law § 581(4)(c) and the notion that the experience rating is

only a computational device, these arguments miss the point. The practical import of New York

law is described aptly in *Tougher Industries*:

> New York Labor Law provides for an experience rating system to calculate an employer's contributions to the state's unemployment compensation fund. Under this system, employers have their unemployment tax rate determined annually based upon their prior employment and unemployment experience. N.Y. Lab. Law § 581. The statute also provides that where a business is transferred from one employer to another, the former employer's unemployment insurance rating shall also be transferred. N.Y. Lab. Law § 581(4)(a). Essentially, the past experience of the prior employer, is used to project future losses of the successor employer.

*Tougher Indus.*, 2013 WL 1276501, at *6. The "computational device" argument would have merit if, for example, the DOL had assessed a higher tax on Reliant because it assigned the same rating to all companies of similar size that operate in similar industries. But this is not the reason the DOL assigned the *Debtors'* rating to Reliant. The obvious reason was that Reliant acquired the *Debtors' assets*. Accordingly, the DOL's "rights are grounded, at least in part, in the fact that [the Debtors'] very assets have been employed for [school transportation services.]" *Chrysler*, 576 F.3d at 126 (internal quotation marks omitted); *see TWA*, 322 F.3d at 290; *Tougher Indus.*, 2013 WL 1276501, at *8 (stating that Section 363(f) encompasses a wide range of obligations that may flow from ownership of property). Under Section 363(f) and the facts of this case, it is not relevant that Reliant's liability was contingent on the occurrence of future events. *See Tougher Indus.*, 2013 WL 1276501, at *8 (concluding that the DOL's right to "tax" purchasers at the debtors' experience rating is an interest in property of the bankruptcy estate that can be extinguished under Section 363(f)).

Furthermore, "[t]his holding is also consistent with the purpose of bankruptcy sales, which is to maximize the value of the asset and, thus, the dividend to creditors." *Id.* Unquestionably, that purpose was achieved in this case. The sale had to be completed within days to preserve the value of the DOE contracts. In addition, the sale ensured that pupil

transportation services were available at the start of the school year, and protected the jobs of hundreds of employees. *See, e.g.*, ECF No. 100-2 ¶¶ 4; 6.

## VII.

Having determined the DOL had an interest in the Debtors' property within the meaning of Section 363(f), the only remaining question is whether this interest was extinguished pursuant to the sale order. It is clear that it was. The sale order defines interests broadly and provides that Reliant's purchase of the Acquired Assets was free and clear of such interests, as well as any successor, transferee, or similar liability. ECF No. 140 ¶¶ I; 6; 10. Under the Asset Purchase Agreement approved by the sale order, Reliant acquired the Debtors' busses and the DOE Contracts, and the Trustee was required to assume and assign certain collective bargaining agreements to Reliant. ECF No. 359-2 § 2.5(a). Thus, it was anticipated that Reliant would employ all or some of the Debtors' employees, and the Asset Purchase Agreement expressly contemplated that Reliant would be released from liability for "unemployment compensation" and other successor tax liability. *Id.* Art. 1 § 1.1 (defining "Liabilities" to include "Taxes," and "Taxes" to include, *inter alia*, unemployment compensation); *see id.* (providing for the assumption of certain federal tax lien liabilities and stating that "[f]or the avoidance of doubt, any obligations" of the Debtors "to any other taxing authorities or governmental entities . . . shall not be included" as a liability). The DOL, a party on notice of the sale hearing, should have had no trouble anticipating that its right to apply the Debtors' experience rating to the purchaser was implicated by the sale.

## VIII.

Accordingly, based on the entire record and applicable law, the Court finds that the interest held by the DOL – its right to transfer the unemployment experience rating of the

Debtors to the purchaser of the Debtors' assets – was subject to the "free and clear" provisions of the sale order and 11 U.S.C. § 363(f).

**SO ORDERED:**

Dated: Brooklyn, New York
          April 29, 2013

                                        <u>s/Jerome Feller</u>
                                        JEROME FELLER
                                        UNITED STATES BANKRUPTCY JUDGE